No. 38,904

Ross D. Herron and R. Wayne Herron, *Appellees, v.*
W. E. Chappell, *Appellant.*

(255 P. 2d 632)

Opinion filed April 11, 1953.

*James A. Williams,* of Dodge City, argued the cause, and *C. W. Hughes,* and *Byron G. Larson,* both of Dodge City, were with him on the briefs for the appellant.

*Harry A. Waite,* of Dodge City, argued the cause, and *E. C. Minner,* of Dodge City, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Wedell, J.: Plaintiffs filed a suit for an injunction. Defendant resisted that relief and cross petitioned for an accounting and the

appointment of a receiver. Plaintiffs prevailed in all respects and defendant has appealed from the order overruling his motion for a new trial.

Appellees admit the appeal was timely perfected from the order overruling the motion for a new trial but argue the judgment cannot be challenged now for the reason no appeal was taken from the judgment. The contention is not good. Laws 1951, chapter 350, section 1 (G. S. 1951 Supp. 60-3314a), provides:

"When an appeal or cross-appeal has been timely perfected the fact that some ruling of which the appealing or cross-appealing party complains was made more than two months before he perfected his appeal shall not prevent a review of the ruling."

See, also, *State Highway Commission v. Safeway Stores,* 170 Kan. 545, 547, 228 P. 2d 208, and *Holmes v. Kalbach,* 173 Kan. 736, 252 P. 2d 603.

Appellees, Ross D. Herron and R. Wayne Herron, are owners of a fractional remainder interest in certain lands involved. They farmed seven quarter sections under a lease from their mother and an aunt. The questions involved pertain to the rights of the parties to the possession, control and operation of three of those quarter sections, commonly known as the Herron farm and to their interest in the 1951 crop thereon.

The alleged rights of the parties were based on an agreement made in the early part of 1951, the agreement being only partly in writing. The written portion was in the form of a memorandum which pertained to certain matters involved. It did not constitute a clear or an enforceable contract without the terms agreed to orally.

It is unnecessary to copy the voluminous pleadings consisting of appellees' amended petition, appellant's answer and cross petition and appellees' reply. Nor need we separate the allegations of appellees' pleadings. However, in view of the trial court's findings we shall analyze the pleadings. Appellees' pleadings, in substance, alleged:

On or about March 27, 1951, the parties entered into a joint adventure agreement solely for the purpose of feeding cattle and not for farming purposes; appellees were to raise ensilage for 1951 fall and winter feeding of approximately 600 head of cattle which appellant agreed to provide; appellant also agreed to raise approximately $40,000 of working capital for the cattle feeding venture; the profits of the venture were to arise out of the gain upon sale of

the cattle; before computing profits appellees were to be reimbursed for certain items of expense including wear and tear on their machinery in producing the ensilage and for their labor; there was no agreement appellant should be a joint adventurer in the cultivation of the land, the operation of the farm or in the raising of crops; appellant repudiated his part of the agreement; he provided neither the cattle nor the working capital; he wrongfully came onto the farm and undertook to direct farming operations; appellees insisted that he refrain from such action and finally served a written notice on him to remain off the premises; appellant thereafter wantonly trespassed on the land and planted Ellis sorgo; appellant filed an action in the district court to obtain a declaratory judgment; the court concluded the agreement between the parties did not constitute a leasing contract on the land, appellant had no estate, title or interest in the real estate and the parties were joint adventurers in the *cattle operations.*

Appellees further, in substance, alleged:

Due to appellant's breach of his obligations the joint adventure failed to commence; the venture had no working capital, cattle or any other assets or property for which an accounting to appellant or the appointment of a receiver were necessary.

Appellant's answer admitted the allegations in appellees' amended petition that the parties had entered into a joint adventure agreement for feeding cattle; appellees served witten notice on him to remain off the Herron farm; appellant later filed an action against them for a declaratory judgment in which it was determined appellant had no interest in the lands involved or in the crops, as a tenant.

His cross petition, insofar as now material, further, in substance, alleged:

The parties entered into a joint adventure or partnership contract, partly oral and partly written, for the farming and operation of the lands and for the running of cattle thereon and upon approximately 800 acres of lands owned by others and leased by appellant.

· The cross petition further stated:

"That the oral portion of said contract provided that the same would run for a term of approximately one year; that maize and ensilage would be planted on said land of plaintiffs to be used in connection with the cattle; that they would be paid a sum of money equal to the value of one-third of a crop of wheat had wheat been grown on said land instead of ensilage or maize, and

in addition would be paid a certain bonus and royalty by the partnership under certain conditions. That defendant was to be the manager and supervisor of all of the operations of the partnership and would use their machinery, and would be paid therefor; that several hundred head of cattle would be procured and wintered and fed on said lands, and that in the fall of 1951 plaintiffs would furnish 400 to 500 acres of wheat pasture to the partnership on other lands owned and leased by them. That defendant was to receive all net profits and income remaining after the payment of said cash rental, bonus, royalty and costs and expenses of procuring and feeding and handling said cattle, including the labor of plaintiffs and the costs of said wheat pasture.

"That a true and correct copy of the written portion of said contract is marked Exhibit A, attached hereto and made a part hereof."

Exhibit "A" reads:

"RENTAL RATE TO HERRONS FOR FARM LAND:

"I. Landlord's share ⅓ cash value of the crop at the elevator whenever marketed within the crop year. The yield to be determined by average yield of all the wheat crop on the remainder of the Herron farm.

"II. Rental of their machinery as suggested by the A.S.A.E. committee on farm machinery rentals, plus 5%.

"III. Labor done by Ross and Wayne to be determined the top rate in the community, plus 5%.

"IV. Royalty to Ross and Wayne Herron 20% of net from all cattle on both Chappell's and Herron's farm if Herrons provide 480 A."

The cross petition also alleged:

"Defendant [appellant] further alleges that pursuant to said contract of partnership worked and prepared for planting in the Spring of 1951 approximately 347 acres of ground. That approximately 245 acres were planted to maize, which maize made a very good stand and about 230 acres matured as hereinafter alleged. That approximately 100 acres of ground were planted to Ellis Sargo, which came up with a nice stand but which was plowed under by plaintiffs. That defendant made arrangements for cattle, other machinery, and other property required in carrying on the partnership enterprise.

.    .    .    .    .    .    .    .    .    .    .    .

"That said maize acreage matured between 11,000 and 12,000 bu. of grain which has been harvested by plaintiffs and is in their possession. That shortly after June 21, 1951, plaintiffs plowed under said 100 acres of ensilage; that had it been permitted to mature said ensilage would have amounted to approximately 1500 tons, and that its market value in the fall of 1951 was and is approximately $8.00 per ton."

The cross petition, in substance, further stated:

Appellees took possession of all assets of the partnership, including the growing crops; not later than November 10, 1951, appellees wrongfully attempted to rescind the agreement, to which rescission appellant has at no time agreed; appellant was entitled

to a two-thirds interest in the partnership less the cost of harvesting; the accounting would disclose he was entitled to a two-thirds interest in all assets including the maize and ensilage; appellees had disposed of some of the assets and threatened to dispose of the remainder; he was entitled to the appointment of a receiver to take charge of and collect the assets of the partnership.

Upon consideration of widely conflicting testimony the district court first found generally in favor of appellees and against appellant and secondly that the allegations of appellees' petition and amended petition *were true.* The court further expressly found the allegations of appellant's answer and cross petition, which were inconsistent with the allegations of appellees' petition and reply, *were not true.* The court also found:

"The Court further finds that the allegations of defendant's answer and cross petition, which are inconsistent with the allegations of plaintiffs' petitions and reply are not true; that on or about March 27, 1951, plaintiffs and defendant entered into a joint adventure agreement for the feeding of cattle; that such agreement provided for the planting of ensilage by plaintiffs upon certain lands held by them under lease, and the use of such ensilage by the joint adventurers for subsequent fall and winter cattle feeding; that the farming of the lands described in the pleadings was not intended as a part of the joint adventure activities, and that the joint adventure had no interest in such ensilage crops until commencement of actual cattle feeding operations. The Court finds that said agreement did not provide for the planting or growing of maize and the defendant has no interest in any maize crops produced on plaintiffs' leasehold lands. The Court finds that defendant is not entitled to an accounting, nor any order of distribution, nor to judgment for two-thirds of the matured value of any ensilage, nor to the appointment of a receiver, and that defendant should pay the costs herein, taxed in the amount of $60.68."

As previously stated appellant appeals from the order overruling his motion for a new trial which was based on the grounds:

"1. Erroneous rulings of the court.
"2. The judgment and decision of the court is in the whole or in part contrary to the evidence.
"3. For error of the court in overruling defendants Demurrer to plaintiffs' evidence."

Appellant states he is here relying on grounds (2) and (3).

We shall first consider the order overruling appellant's demurrer to appellees' evidence. It is not contended the amended petition failed to state a cause of action for an injunction or that appellees' answer did not constitute a defense to appellant's cross petition. There was evidence to support the allegations of appellees' pleadings.

Appellant stresses certain portions of appellees' testimony which he regards as contradictory and unfavorable to them. In testing the sufficiency of evidence as against a demurrer courts do not compare or weigh evidence but disregard all unfavorable evidence, consider only evidence favorable to the party adducing it and accept it as true. If in the application of such rules there is any evidence which supports or tends to support a cause of action the demurrer must be overruled. (*Staab v. Staab,* 160 Kan. 417, 163 P. 2d 418; *In re Estate of Dieter,* 172 Kan. 359, 239 P. 2d 954.) Applying these established rules we think the court did not err in overruling appellant's demurrer.

We return now to a consideration of the second alleged ground for a new trial, namely, "The judgment and decision of the court is in the whole or in part contrary to the evidence." Appellant's primary contention is the trial court's findings that the actual farming of the lands was not intended to be a part of the joint adventure activities, is contrary to the evidence. That and all other issues, as heretofore shown, were sharply drawn by the pleadings. There was ample evidence to support the finding. Appellant relies on a portion of appellees' testimony that they were to be paid out of the profits of the cattle feeding enterprise for such things as labor in producing ensilage, rent for their farm machinery and the cash rent to appellees' landlords before a division was made of the net profits of the cattle feeding enterprise. Appellant argues that evidence proves he was a joint adventurer in the actual farming operations. The contention fails to distinguish between appellees' sole responsibility for the process of raising ensilage and appellant's interest in that product after it had matured. According to appellees' testimony, which the trial court chose to believe, the actual farming of the land, that is, the raising of the ensilage, was their sole responsibility under the agreement and the ensilage on maturity was to become an asset of the cattle feeding venture.

The finding of the trial court that there was no agreement for the planting of maize and that appellant had no interest in that crop is likewise supported by evidence. Whether appellant was a trespasser on the farm in doing what he did thereon or whether he was there with appellees' consent and acquiescence also presented a sharply controverted fact which the court resolved against him. The court likewise found appellant breached his obligations under the agreement which prevented its execution. The court, of course,

was obliged to consider appellant's contradictory testimony on all these issues but it was not obliged to believe it.

It also may be well to observe appellees testified they had objected to the title or label placed by appellant on the written memorandum, exhibit "A," previously set forth, for the reason it was misleading and did not reflect the true agreement between the parties as to a rental of their farm to appellant but that appellant stated he merely wanted something in writing to submit to parties from whom he hoped to raise working capital. The real character and legal effect of an instrument is not determined by a characterization or label attached thereto but by its terms, provisions and intent. (*In re Estate of Koellen,* 162 Kan. 395, 176 P. 2d 544.) In view of the memorandum itself and all the oral testimony, which the court accepted as true, it is clear the court was not required to believe appellant had the rights of a tenant on the Herron farm or the right of a joint adventurer in the actual farming process.

Appellant states it was determined in the former declaratory judgment action that the parties were joint adventurers in the farming operation and in the cattle operation; that no appeal has been taken therefrom and the decision is *res adjudicata.* We fail to find where appellant pleaded the former judgment as a defense or as a part of his cross petition. Assuming, however, the court properly considered its former judgment we fail to see how we can disturb the instant judgment on the record before us. It would appear entirely probable the same court in the former action concluded the raising of ensilage by appellees was a part of the joint adventure for the cattle feeding enterprise but not that appellant had any right to farm the land. This view is partly fortified by the fact the court in that action expressly held the arrangement was not a leasing contract and that appellant had acquired no estate, title or interest in the real estate involved. So interpreted the judgments are not conflicting. That was probably the trial court's interpretation. But we need not now determine that question. The district court by its general findings in the instant action determined it was appellant's breach and repudiation of the agreement which prevented the commencement of operations thereunder. That being true appellant cannot prevail irrespective of whether the joint adventure included farming operations.

The judgment is affirmed.