No. 40,714

HENRY SCHINDLER, A. W. MOSHER, JACK BENEDICT and W. J. WINTER, *Appellees*, v. ELSIE ROSS, (THE COOPERATIVE REFINERY ASSOCIATION, a Corporation, *Defendant*), *Appellant*.

(320 P. 2d 813)

Opinion filed January 25, 1958.

*Tweed W. Ross,* of Beloit, argued the cause and was on the briefs for the appellant.

*Wayne McCaslin,* of Stockton, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: Plaintiffs, Henry Schindler, et al., commenced an action to recover money paid under mistake of fact against the defendants Elsie Ross and The Cooperative Refinery Association, a corporation, by filing a petition containing allegations which were

sufficient to state a cause of action for that relief. Answers were filed by the defendants consisting of a general denial and other allegations relied on as precluding plaintiffs' right to recover in the action.

Following joinder of issue on questions relating to liability the cause came on for trial by the court, a jury trial having been waived. Thereupon attorneys for plaintiffs and attorneys for defendants agreed upon a part of the facts in the case, none of which is to be found in the record presented on appellate review. Thereafter plaintiffs presented their evidence and defendant Ross's demurrer thereto was overruled. Such defendant then presented her evidence and plaintiffs offered rebuttal evidence. If the defendant association produced evidence the record contains no reference thereto.

At the conclusion of all evidence offered the court took the cause under advisement and, having been requested at the start of the trial to make findings of fact and conclusions of law, it directed the parties to prepare and present suggested findings of fact and conclusions of law. The record indicates compliance with this instruction but fails to include or make reference to any such findings or conclusions.

Eventually the trial court made extended and complete findings of fact. They clearly reflect the facts, which do not appear from the limited evidence abstracted, on which the rights of the parties must stand or fall. Since it is not contended that such findings are unsupported by the evidence, that they are incomplete or that further findings should have been made, and, since an examination of the record discloses they are all supported by competent testimony, they must be regarded by this court as the facts of the case. They read:

"1. That this is an action for recovery of money paid under mistake of fact, which action was brought by Plaintiffs for and on behalf of themselves and others, and there is no dispute as to the authority of Plaintiffs to bring this action for and on behalf of themselves and others not named in said suit.

"2. That in October of 1939, one C. W. Trickett, since deceased, acquired assignments of the oil and gas lease on the Northeast Quarter (NE ¼) of Section Thirteen (13), Township Nine (9) South, Range Seventeen (17), in Rooks County, Kansas, same being known as the Mary B. Dougherty lease, from one A. W. Walker, the original lessee; that Plaintiffs and all of the present owners of said oil and gas lease acquired their interests therein from C. W. Trickett; that all of the present owners of said oil and gas lease, formed an association under the style and name of C. W. Trickett & Associates; that said association has never been incorporated; that Plaintiffs and all of the other

parties whom Plaintiffs represent, are the owners of said oil and gas lease, same being managed by a Managing Board duly elected by said association; that the only officer elected by said Managing Board is a Secretary-Treasurer, and that Henry Schindler, one of the Plaintiffs, is now the duly qualified and acting Secretary-Treasurer of said Managing Board.

"3. That at the time of the assignment of the aforesaid oil and gas lease from A. W. Walker to C. W. Trickett, or soon thereafter, the said C. W. Trickett, executed an assignment of interest in oil payment, which is recorded in Book P at page 322 of the records of Rooks County, Kansas, thereby assigning to Ray Ross et al., an oil payment of $20,000.00 to be paid out of a ⅛th of the ⅞th working interest of said lease; that under and by virtue of said assignment, there was assigned to Ray Ross, the sum of $7,293.17; that said assignment further provided that said oil payment should be made directly to Ray Ross et al., the assignees therein named, by the person, company, or corporation, purchasing said oil.

"4. That soon thereafter, oil was discovered upon said lease, and the Co-operative Refinery Association, a corporation, the defendant herein, which was formerly known as the Consumers Cooperative Association, has at all times since purchased the oil from said lease.

"5. That thereafter, a division order was signed with the Consumers Co-operative Association, by Ray Ross et al., which said division order is dated December 5th, 1939; that this division order, which is Plaintiffs' Exhibit 'A', was signed by all of the recipients of the $20,000.00 oil payment, including the said Ray Ross; that under and by virtue of the terms of said division order, Ray Ross was to receive $7,293.17/20,000.00 of the ⅛th of the ⅞ths working interest; that thereafter, the Defendant, Consumers Co-operative Association, now the Co-operative Refinery Association, started and continued to make oil payments to Ray Ross et al., out of the ⅛th of the ⅞ths working interest; that said original division order was never altered, rescinded or changed insofar as the interest of Ray Ross was concerned.

"6. That Ray Ross received and accepted his payments under this division order prior and up to the time of his death; that he died testate on the 29th day of July, 1948; and that his Last Will and Testament was duly admitted to probate in the Probate Court of Mitchell County, Kansas, on the 31st day of August, 1948; that Elsie Ross, his widow, was the sole and only devisee and legatee under said Last Will and Testament, and as such devisee and legatee acquired the interest of Ray Ross in and to the aforesaid oil payment; that thereafter, the interest of Ray Ross in the aforesaid oil payment, was paid to Elsie Ross; that a true statement of all payments made by the defendant, Cooperative Refinery Association to Ray Ross and his successor in interest, Elsie Ross, is shown in Plaintiffs' Exhibit 'B'.

"7. That the aforesaid oil payment in the sum of $7,293.17 was paid in full out of the October 1950 runs, which said amount was paid to the said Elsie Ross on the 15th day of November, 1950; that this payment so made on November 15th, 1950, also constituted an overpayment of $31.44 on said amount.

"8. That notwithstanding the fact that the payment made on November 15th, 1950, paid and over paid the oil payment to Ray Ross and his successor in interest, the Defendant, Cooperative Refinery Association, continued to

make payments to the said Elsie Ross until November of 1951, the last payment having been for the oil runs of October 1951.

"9. That there was over paid to the said Elsie Ross, by reason of the continuation of the payments as aforesaid, the sum of $1,208.94, for which amount Plaintiffs brought this action to recover from Elsie Ross.

"10. That in fact there was paid to Ray Ross and Elsie Ross, his successor in interest, the sum of $8,502.11, by the defendant, Cooperative Refinery Association, instead of the sum of $7,293.17, as provided in said division order; that there is no dispute as to this amount being received by Ray Ross during his lifetime and Elsie Ross after his death.

"11. That sometime in December 1950, the exact date of which is unknown, the Plaintiff, Henry Schindler, wrote the Defendant, Cooperative Refinery Association, and advised them that it was his opinion that the $20,000.00 oil payment would be paid in full by the payment of the October 1950 oil runs which were paid on November 15th, 1950; that the Cooperative Refinery Association has denied receiving such a letter; that such a letter was addressed to the Cooperative Refinery Association, stamped and mailed at Stockton, Kansas, with the scrivener's return address thereon, and the letter was never returned to him.

"12. That in August of 1949, Plaintiffs and those whom they represent, entered into a drilling contract with the Sterling Drilling Company, of Sterling, Kansas, for the purpose of drilling additional wells on said lease, for which drilling it was agreed that the contract price therefor be paid out of 75% of the ⅞ths of the working interest, and as soon as the $20,000.00 oil payment was paid in full, then 75% of the ⅛ pledged for the $20,000.00 oil payment was to be paid to the Sterling Drilling Company; that the Plaintiff, Henry Schindler had no reason to believe that upon payment of the $20,000.00 oil payment in full, that the Cooperative Refinery Association would not pay the 75% of the ⅛th to the Sterling Drilling Company, upon receipt of his letter written in December of 1950, or that the ⅛th was being held by the Cooperative Refinery Association in suspense for Sterling Drilling Company, pending the execution of a new transfer order or division order.

"13. That the plaintiff, Henry Schindler, acting as Secretary-Treasurer of said Association, did not again learn until November 12th, 1951, that the Defendant, Cooperative Refinery Association was still paying to the recipients of the $20,000.00 oil payment, and not to the Sterling Drilling Company; that on said 12th day of November, 1951, the said Henry Schindler again wrote the Cooperative Refinery Association, therein calling attention to his previous letter of December 1950, and advising that the $20,000.00 oil payment should have been completed with the payment made in November of 1950; that immediately thereafter, the Cooperative Refinery Association suspended payments on the $20,000.00 oil payment.

"14. That the defendant, Cooperative Refinery Association knew of the contract with Sterling Drilling Company, and in fact, had a copy of the contract in their files, and that they were at that time paying to the Sterling Drilling Company 75% of the ⅞th working interest.

"15. That Sterling Drilling Company was eventually paid out of the 75% of the ⅞ths working interest sometime in 1952, and before transfer or division

orders could be made or procured for the purpose of paying the 75% of the ⅛th pledge to the oil payment which was held in suspense after Cooperative Refinery Association finally quit paying on the oil payment in November of 1951.

"16. That Plaintiff, H. E. Schindler, also known as Henry Schindler, was a mechanic and garage proprietor by trade, and was not educated in methods of bookkeeping.

"17. That this action was commenced on November 13, 1953, and within three years from the date of the first overpayment to Elsie Ross."

The trial court's conclusions of law, returned along with its findings, are as follows:

"1. That the defendant, Elsie Ross, did not know at the time of receiving the overpayments, that she was being overpaid, and Cooperative Refinery Association, or at least the proper officers thereof, did not know that Elsie Ross was being overpaid, until receipt of Schindler's letter, dated November 12th, 1951, at which time the payments were immediately stopped.

"2. That this is an action on an implied contract, to return that which the Defendant, Elsie Ross, had received and to which she was not entitled, same having been paid under a mistake of fact, and the Statutes of Limitations was therefore three years, commencing from the time of the over-payment.

"3. That this action was commenced within three years from date of the first over-payment, and therefore was not barred by the Statute of Limitations.

"4. That the over-payment to the defendant, Elsie Ross, was made under mistake of fact, and therefore was not a voluntary payment.

"5. That Plaintiff, Henry Schindler, had no reason to believe that upon payment of the $20,000.00 oil payment in full, and especially after writing his first letter in December of 1950, to the Cooperative Refinery Association, that said Cooperative Refinery Association would not stop making payments on said oil payment, and would not divert at least 75% of the ⅛th of the ⅞ths working interest which had been previously pledged to the said oil payment, to the Sterling Drilling Company, as per their contract with Sterling Drilling Company, of which contract Cooperative Refinery Association had knowledge and a copy thereof in their files.

"6. That Plaintiff, Schindler, acted immediately and promptly, upon finding out that Defendant, Cooperative Refinery Association was still making payments upon the $20,000.00 oil payment, and was not paying money or 75% thereof, to Sterling Drilling Company, and under all of the circumstances shown in the case, was not and therefore, Plaintiffs were not guilty of laches.

"7. That there has been no proof of agency in said case, and Cooperative Refinery Association cannot be construed to be the agent of Plaintiffs.

"8. That the position of the Defendant, Elsie Ross, has not been altered or changed, so as to cause hardship on her part, in the event of a judgment for the return of the money paid to her under mistake of fact.

"9. That under and by virtue of the terms of the Division Order, dated December 5, 1939, signed by Ray Ross, et al., Ray Ross accepted an oil payment in the sum of $7,293.17, and Elsie Ross, his widow and sole devisee and legatee, could inherit no more interest than he had at the time of his death.

That this Division Order authorized the Defendant, Cooperative Refinery Association to pay to Ray Ross or his assigns, the sum of $7,293.17 and no more, and said Defendant was in a position to know and should have known, if and when said oil payment was completed. And the clause in said Division Order, to-wit:

" 'You will not be responsible for any change of ownership in the absence of actual notice and satisfactory proof thereof.', referred to an actual change in ownership. In this case there was no change in ownership, but merely the payment in full of an oil payment, and the Defendant, Cooperative Refinery Association, should have ascertained if and when said oil payment was paid in full, and would be liable to plaintiffs for any overpayment thereafter made.

"10. That Plaintiffs as owners of said oil lease, were entitled to all money accruing from the purchase of oil therefrom, over and above the $20,000.00 oil payment and the amount pledged under contract to the Sterling Drilling Company, and have received all such money with the exception of the over payment on the $20,000.00 oil payment.

"11. That Plaintiffs should have and recover judgment against the Defendants, Elsie Ross and Cooperative Refinery Association, as prayed for in their petition filed in said action."

After handing down the foregoing findings and conclusions the court rendered judgment in accord therewith against Elsie Ross and the Cooperative Refinery Association for the sum of $1,614 with interest at six percent from June 22, 1956.

At this point we pause to note the judgment exceeds by $405.06 the amount ($1,208.94) found to have been overpaid Elsie Ross. Therefore, since the petition sought interest from the date of the first overpayment on November 15, 1950, and the trial court found (See finding of fact No. 11) plaintiff should have judgment as prayed for in that pleading, it may be assumed this excess represents interest at six percent from the date last mentioned to June 22, 1956.

Following the judgment Elsie Ross and the Association filed separate motions for a new trial. These motions, based on several statutory (G. S. 1949, 60-3001) grounds, were overruled on January 14, 1957. Thereupon, and within two months thereafter, Elsie Ross gave notice of appeal wherein she stated she was appealing from the overruling of her motion for a new trial, the judgment against her, and divers prior adverse rulings (specifying them) of which she now complains. The association perfected no appeal and its rights are not here involved.

At the outset we are met with a contention which must be disposed of before consideration can be given to questions relied on by appellant as affording grounds for reversal of the judgment. Con-

ceding the appeal was timely perfected from the order overruling the motion for a new trial appellees insist the only question involved in this case is whether the court erred in overruling such motion because no appeal was taken from the judgment or other prior rulings complained of within the time prescribed by G. S. 1949, 60-3309. This contention is not good. Since the enactment of the Laws of 1951, Chapter 350, Section 1, (now G. S. 1955 Supp., 60-3314a), an aggrieved party who perfects a timely appeal from an order overruling a motion for a new trial, based upon grounds recognized by 60-3001, *supra*, may have a review of prior rulings, including the judgment, of which he complains even though those rulings were made more than two months before the perfection of such appeal, provided that in his notice of appeal—as here—he gives notice he is appealing from such rulings. See *Herron v. Chappell*, 174 Kan. 350, 255 P. 2d 632; *Holmes v. Kalbach*, 173 Kan. 736, 252 P. 2d 603; *Western Shale Products Co. v. City of Fort Scott*, 175 Kan. 643, 266 P. 2d 327. We therefore turn to questions raised by appellant with respect to matters specified in her notice of appeal.

We are not disposed to here labor numerous contentions made by appellant respecting the overruling of her demurrer to the lengthy petition. It suffices to say we have carefully reviewed that pleading in the light of all challenges made against its sufficiency and have no difficulty whatsoever in concluding such demurrer was properly overruled.

Early in the proceedings below appellant raised a question of venue claiming that, under the provisions of G. S. 1955 Supp., 60-501, the action should have been brought in the county where the land and oil and gas lease, giving rise to the involved division order, were situated. The court held to the contrary. Appellant now claims that action was erroneous. We do not agree. The statute in question cannot be construed as having application to an action—such as is here involved—on implied contract to recover money paid under an oil and gas division order through a mistake of fact where there is no dispute between the parties participating in the execution of that instrument as to their respective interests under its terms and provisions.

Referring to appellee's opening statement, no portion of which is abstracted, appellant contends its motion for judgment on such

statement should have been sustained. Having determined the demurrer to the petition was properly overruled, and since it is conceded the request for judgment was based on the same reasoning as that presented in support of the demurrer, this claim of error requires little attention. Even so it should perhaps be stated this court is committed to the rule that no judgment can be entered on an opening statement unless in the making thereof it appears the party making it has admitted facts which necessarily and absolutely preclude recovery (*Wilson v. Holm*, 164 Kan. 229, 188 P. 2d 899; *Rodgers v. Crum*, 168 Kan. 668, 215 P. 2d 190). Inasmuch as the opening statement is not abstracted we cannot say it contained any such admission.

After an extended examination of the record and careful consideration of all arguments made with respect thereto we find nothing to warrant the upholding of appellant's contentions that the trial court erred in overruling her demurrer to appellees' evidence; that the judgment is contrary to the evidence; or that such judgment is contrary to the findings of fact.

Nor are we able to find the admission of any evidence complained of prejudicially affected appellant's substantial rights. In that situation any error committed by the trial court in its rulings with respect to such evidence must be disregarded. (See G. S. 1949, 60-3317.)

Finally appellant contends that if, as has now been determined, appellees are entitled to recover the overpayment made to appellant they are not entitled to interest on the amount paid as prayed for in the petition, *i. e.*, from November 15, 1950. Without laboring the question we think there is merit to this contention. This, as we have previously indicated, was an action on implied contract to recover money paid under a mistake of fact. Moreover, it is clear from the record, in fact the trial court found, that at the time of receiving the involved payments the appellant did not know she was being overpaid. The general rule, which we believe to be sound and to which we therefore adhere, is that where money has been paid and received through mutual mistake of fact, without fraud or misconduct on the part of him to whom the money was paid, interest does not begin to run and will not be allowed until the mistake has been discovered and demand for repayment made. See 30 Am. Jur., Interest, p. 37 § 46; 47 C. J. S., Interest, p. 58 § 46.

The record presented in this court fails to disclose that appellees made a demand on appellant for a return of the money she had received through the mutual mistake of all parties involved prior to commencement of the action. Faced with such a record we are compelled to hold that the demand for repayment was made on November 13, 1953, the date on which the suit was filed and service of summons was had. In that situation, application of the rule just stated compels the conclusion that appellees are not entitled to recover any interest from appellant during the interim between November 15, 1950, and November 13, 1953, and that the judgment must be modified accordingly.

What has been heretofore stated and held means that the judgment for $1,614, rendered by the district court against appellant, should be modified by reducing the amount thereof to $1,398.04, and that the cause should be sent back to such court with directions to render judgment in favor of appellees (plaintiffs) and against appellant (defendant) for that sum with interest at six percent from June 22, 1956, and costs.

It is so ordered.