No. 41,152

KARL SHERMAN, *Appellant*, v. DARRYL F. SMIKA, *Appellee* and *Cross-Appellant*.

(334 P. 2d 330)

Opinion filed January 24, 1959.

*Tudor W. Hampton*, of Great Bend, argued the cause, and *Russell Strobel*, of Larned, and *Jerry M. Ward* and *J. W. Hannah*, both of Great Bend, were with him on the briefs for the appellant.

H. *Lee Turner,* of Great Bend, argued the cause, and *Vincent Fleming,* of Larned, was with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: In the court below Sherman sued Smika for damages alleged to have been suffered as a result of personal injuries and property loss occurring in an automobile collision. The defendant answered and filed a cross-petition seeking to recover damages from plaintiff because of the destruction of his automobile.

The case being at issue, a trial to a jury began, and counsel for the parties then made opening statements. At this point, the trial court sustained defendant's motion for judgment as to plaintiff's pleadings and opening statement, and also a motion of plaintiff for judgment denying defendant's cross-petition. The plaintiff has appealed from the trial court's ruling as to his claim, and defendant has cross-appealed in reference to his cross-petition.

There can be no question but that the learned trial judge was of the opinion that both parties were negligent and that neither could recover. Be that as it may, there would appear to be a grave question whether at this point in the lawsuit the record was sufficient to show affirmatively beyond any question of fact that both parties to the case were guilty of negligence.

This court has never favored the granting of a motion for judgment after the opening statement unless from a consideration of the pleadings and the statement made by counsel, the party under the admitted facts could not prevail. The rule of this court was stated in *Hengel v. Thompson,* 176 Kan. 632, 272 P. 2d 1058, as follows:

"Issues were framed by the pleadings, and the defense alleged was not waived or shown to be groundless by the opening statement. Entering judgment on an opening statement is a summary but ordinarily not a satisfactory approved method of settling disputed issues of fact. A litigant's cause should not be concluded by an incomplete or ambiguous statement made to the court or jury as to the proof he will offer at the trial.

"In *Stewart v. Rogers,* 71 Kan. 53, 80 Pac. 58, we held:

" 'The statute authorizing a party upon whom rests the burden of the issues briefly to state his case and the evidence by which he expects to support it is permissive only. He may or may not make such statement, at his own election. The issues are made not by such statements but by the pleadings. If a party elect to make such statement, and there be a substantial variance between it and his pleading, it is not a sufficient ground upon which to base a motion for judgment in favor of the opposite party, unless such statement

in effect admits facts which preclude the party's right of action or defense as stated in his pleading.'

"It is the general rule of law in this state that opening statements of counsel are generally no more than outlines of anticipated proof, and not intended as a complete recital of the facts to be produced on contested issues. Judgment should not be entered on such statements unless they are understandingly and completely made and the facts so stated absolutely preclude a recovery or a proposed defense. Where there is doubt or ambiguity in the opening statement of counsel upon which judgment is asked, the counsel who makes it is entitled to the presumption that he did not intend to make an admission that would be fatal to his case. (*Smith v. Insurance Co.,* 108 Kan. 572, 196 Pac. 612; *Caylor v. Casto,* 137 Kan. 816, 22 P. 2d 417.) The pleadings and not the statements of counsel, make the issues, and no matter how deficient a statement may be from an artistic standpoint, or what its shortcomings may be in the estimation of the critical attorney on the other side, the court is not authorized to end the case because of them unless some fact be clearly stated or some admission be clearly made which evidence relevant under the pleadings cannot cure, and which, therefore, necessarily and absolutely precludes recovery. (*Brashear v. Rabenstein,* 71 Kan. 455, 80 Pac. 950; *Caylor v. Casto,* supra; *Rodgers v. Crum,* 168 Kan. 668, 673, 215 P. 2d 190; *Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899; *In re Estate of Modlin,* 172 Kan. 428, 437, 241 P. 2d 692; West's Kansas Digest, Trial, § 109; 5 Hatcher's Kansas Digest [Rev. Ed.], Trial, § 69-½. See annotation, 83 A. L. R. 221.)" (p. 635.)

The same rule of law adhered to in the Hengel case and the cases therein cited was again reiterated in *Schindler v. Ross,* 182 Kan. 277, Syl. ¶ 2, 320 P. 2d 813.

The pleadings in the present case need not be set out in detail. Plaintiff alleged the accident happened because of defendant's negligence in failing to keep a proper lookout for other users of the highway, in driving at a fast and excessive speed, in failing to stop, turn out, apply his brakes, yield the right of way and in driving into the intersection and against plaintiff's car.

Defendant answered and denied plaintiff's allegations of defendant's negligence. He further alleged that plaintiff had himself been negligent in practically the same particulars as alleged by plaintiff concerning defendant. In his cross-petition, defendant included a claim for his own loss in the sum of $496.77 based upon the plantiff's alleged negligence. Plaintiff's reply and answer to the cross-petition put all these new matters at issue.

In the opening statement, plaintiff's counsel first made the usual introductory statements to the jury advising them that this action was based upon an automobile collision which had occurred at an intersection of two roads in the county near the city of Larned;

that plaintiff had been driving north on a black-top road which ran north and south; that this road was intercepted by another graveled highway running east and west. He continued as follows:

"It (the north and south road) is intersected by an east-west road of gravel, which also is about eighteen feet in width, and, from the west of this intersection, a distance of perhaps seven to eight or nine hundred feet there is a sort of a crest of a hill, so that travel to the east is downgrade to some extent, down to the intersection and through the intersection to the east. This was covered I believe at the time by some fairly fresh gravel. Now, to the south of this intersection and on the west side next to the black-top road, a distance of about a hundred and fifty-six feet from the intersection to the south, the intersection is open. But, about a hundred and fifty-six feet south, there is a little knoll along the side of the road that extends from this point to the south a distance of approximately a hundred to a hundred fifty feet, which obstructs the view of vehicles approaching from the south and from the west, but, for the hundred and fifty-six feet, the intersection is open, and, of course, to the north."

Counsel then stated that the plaintiff was traveling north on the road on business; that he was acquainted with the intersection, and as he reached the knoll, he reduced his speed to approximately forty miles an hour and drove out from behind the knoll about 150 feet from the intersection; he looked to the west on the gravel road and saw the defendant's vehicle approaching from the west, at which time he would judge the defendant's car to be approximately three times as far from the intersection as he was. Counsel stated that defendant felt he had sufficient time to proceed on north without any danger; that he glanced to the right to see if that direction was clear and glanced back to the left again, at which time he was probably within fifty feet of the intersection. He noticed then that defendant's car was proceeding at a very fast rate of speed and was now approximately 150 feet from the intersection; that he realized there was an immediate danger, "so the only thing he could determine advisable to do was to try to clear the intersection ahead of the defendant's vehicle, with the result that he shoved down on the accelerator into passing gear and accelerated to go on through this intersection."

We interpret counsel's next statement to say that defendant did not apply his brakes until after he had entered the intersection; that defendant slid some distance on the gravel road into the intersection with the result that the front end of the defendant's vehicle collided with the left rear side of the station wagon of Mr. Sherman at a point northeast of the center of the intersection. Counsel

continues by describing the manner in which the two cars came to rest and the injuries suffered by the plaintiff.

In the opening statement of the defendant, the defendant's counsel referred to the hill on the east and west road which had also been mentioned by counsel for the plaintiff. He stated that this crest was approximately one thousand feet west of the intersection and sloped eastward into the intersection. He stated that the knoll on the north and south road obstructed the view of that road as to vehicles thereon. His description of the defendant's conduct in approaching the intersection was as follows:

"As he approached the intersection and cleared the crest of the hill, he looked to the north and south and couldn't see any cars coming. Of course, his visibility was obscured by this embankment to some extent, but, he'd never been over either of these roads before and he didn't know this was a blind intersection, and he slowed his car a little bit and probably took his foot off the accelerator, and as he proceeded down the hill, when he was approximately one hundred sixty feet from the intersection, he happened to catch out of the corner of his eyes—he just barely saw the top of the Sherman car through some weeds and immediately he hit his brakes. Of course, he had some reaction time, and by the time he applied his brakes he was a hundred forty-three feet from the intersection. Because of the loose gravel he couldn't get good braking on the gravel road and he proceeded to slide and entered into the intersection. As he was sliding toward the intersection he then saw the plaintiff's car coming out from behind the knoll, and at that time he had good visibility of the plaintiff's car and the plaintiff was traveling at, not forty miles per hour, he was traveling between sixty-five and seventy miles an hour, and while Mr. Smika is sliding toward the intersection, the plaintiff did nothing—he didn't stop his car, didn't slow it down, didn't speed up, he did absolutely nothing, didn't apply his brakes, didn't do anything. He simply proceeded toward the intersection at seventy miles per hour while Mr. Smika is doing everything possible to stop. As a result of the high speed of the plaintiff's car as it proceeded into the intersection, Mr. Smika's car collided with the left rear of the plaintiff's car."

The rest of counsel's statement dealt with the matter of damages and is not important as to the issue now before the court.

After the trial court had sustained motions for judgment against both of the claims of the parties, a motion for new trial was filed and the court denied the motion. In the journal entry, the court set out the following findings:

"1. According to the opening statement of the plaintiff and also that of the defendant each driver, before he came to the knoll could have seen the other car approaching the intersection. Each is presumed to have seen what he could have seen.

"2. The defendant did not reduce his speed, when he came to the knoll,

so that he could stop before entering the intersection. He was, therefore, negligent and this negligence was a contributing cause of the collision and bars recovery by the defendant on his cross-petition.

"3. The plaintiff knew the road, knew about the knoll, and the condition at the intersection, and when he came to the knoll only reduced his speed from sixty miles an hour to about forty miles an hour. Forty miles an hour was too fast a speed for a prudent driver considering the short distance from the knoll to the intersection, and the approaching car of the defendant. This was negligence on his part.

"4. After the plaintiff passed the knoll and saw the defendant's car, he did not reduce his speed but continued at forty miles an hour for about one hundred feet. Again, he was negligent.

"5. When plaintiff saw the defendant's car approaching 'very fast' he did not brake and stop but tried to outrun the defendant's car. Again he was negligent. He did not have a choice of action because his own negligence helped create the dangerous situation.

"6. These acts of negligence on the part of the plaintiff bar him from recovery because each act of negligence was a contributing cause of the collision."

First, it may be noted that paragraph No. 1 is not supported by the record before us at this time. There is no showing that the terrain was such that the drivers could see each other before the plaintiff reached the knoll on the south road and the defendant reached the top of the hill on the west road.

As to finding No. 3, it may be noted that according to the statement, plaintiff reduced his speed to forty miles and that by the table of distances normally required for stopping at certain speeds as published by the State Highway Commission, one may stop a motor car in 142 feet, if he is traveling forty miles an hour. Without arguing the matter further, it would seem that the pleadings and the statements of the parties in this case presented definite questions of fact to be decided by the production of evidence, and that the court erred in sustaining motions for judgment against the claims of both parties. The orders are, therefore, reversed and the case is returned for a new trial as to plaintiff's petition and defendant's cross-petition.

It is so ordered.