(564 P.2d 579)
No. 48,385

GEAROLD L. GRAY, *et al., Appellees,* v. AMOCO PRODUCTION COMPANY, *Appellant.*

Opinion filed May 20, 1977.

*Glenn D. Young, Jr.*, of Wichita, and *R. H. Landt*, of Denver, Colorado, for appellant.

*W. Luke Chapin* and *Alan C. Goering*, of Chapin and Penny, of Medicine Lodge, and *Gary Hathaway*, of Hathaway and Kimball, of Ulysses, for appellees.

Before REES, P.J., FOTH and SWINEHART, JJ.

REES, J.: This action is another round in litigation involving oil and gas royalty owners and producers in the Hugoton-Anadarko area. Plaintiff royalty owners seek interest on royalties held in "suspense" by their producer after it sold gas but before the sale prices were finally determined by the Federal Power Commission. The trial court awarded interest. Defendant producer has appealed from the award. Plaintiffs have appealed from the amount of the award arguing it was insufficient.

The Hugoton-Anadarko area is a rate-making area within the jurisdiction of the Federal Power Commission (hereafter FPC). It encompasses Kansas and parts of Texas and Oklahoma. The plaintiff class is comprised of certain royalty owners under oil and gas leases with defendant Amoco covering lands in all three states. Amoco is a natural gas producer whose sales are at rates subject to regulation and approval of the FPC.

On various occasions since 1958, Amoco filed with the FPC requests to increase the sale prices for its gas. Amoco filed with the FPC gas purchase contracts as rate schedules. Pending final determination by the FPC of the lawfulness of a requested price, Amoco was permitted to charge and it collected from its purchasers the new higher requested price subject to an obligation to refund any excess above what was ultimately deemed to be a lawful rate by the FPC. Surety bonds were required by the FPC to insure repayment by Amoco to gas purchasers of any portion of the rates later declared to be unlawful. While Amoco's sales to its purchasers were at the requested new increased rates, payments

to royalty owners remained at the old lesser rates until such time as the new rates gained final FPC approval.

FPC proceedings and related court proceedings extended over a period of many years. The result has been to give to producers for extended periods of time the use of money (known as "suspense money" or "suspended royalties") which was ultimately owed to the royalty owners. See *Lightcap v. Mobil Oil Corporation,* 221 Kan. 448, 562 P.2d 1. The evidence disclosed that Amoco had used the suspense moneys for its own business purposes.

On September 18, 1970, the FPC issued Opinion No. 586 approving lawful rates and setting ceiling rates for the sale of natural gas produced in the Hugoton-Anadarko area. Opinion No. 586 became final on October 28, 1972, when the case of *In re Hugoton-Anadarko Area Rate Case,* 466 F.2d 974 (9th Cir. 1972), upholding the opinion, became final. Following the latter date, Amoco began the laborious task of computing the amounts of suspended royalties due the royalty owners that had accrued since 1958. In January, April and August, 1973, Amoco made payouts in a total amount exceeding one million dollars to royalty owners. The payouts did not include interest and the failure to pay interest on the suspended royalties is the basis of this action.

Suit was filed on February 28, 1974, in Grant County, Kansas. The class representative is a resident of Grant County and has a royalty interest in land there. The district court certified the action as a class action and found that there were questions of law and fact common to the class. The class was limited, with some exclusions not here relevant, to all persons who were, in or before 1973, entitled to gas royalties under Amoco leases in the Hugoton-Anadarko area and who received payment during 1973 of suspended royalties as a result of FPC Opinion No. 586. The class totals approximately 6,000 royalty owners in Kansas, Oklahoma and Texas, excluding those royalty owners who opted out of the class after receiving notice of the suit. The interests of all members of the plaintiff class arise out of "proceeds" leases. See *Lightcap v. Mobil Oil Corporation,* supra.

The action proceeded to trial. The district court held that Amoco was not entitled to the free use of the royalty owners' share of the increased sale proceeds during the years of suspension and that Amoco was liable for interest on the suspended

royalties. The plaintiff class was awarded judgment for interest on the suspended royalties at the rate of six percent, compounded annually, from time of receipt until the date of judgment, January 8, 1976. We affirm the trial court's general award of interest but modify the award in a manner dealt with later.

The heart of Amoco's appeal is the argument that as a matter of law the plaintiff class is not entitled to interest on the suspended royalties. Amoco argues that the royalty claims of plaintiffs remained unliquidated and not due until FPC Opinion No. 586 became final and therefore the plaintiff class is not entitled to interest on the suspended royalties attributable to any time prior to that date.

When the briefs on this appeal were filed, the question whether prejudgment interest on suspended royalties was recoverable by royalty owners was still an open one in Kansas. Our Supreme Court has since resolved that issue. In *Lightcap v. Mobil Oil Corporation,* supra, an award of six percent interest on suspended royalties in circumstances similar to those of the present case was affirmed on equitable grounds. *Lightcap* is controlling as to an award of prejudgment interest on suspended royalties under Kansas law.

Amoco contends that Texas and Oklahoma law as to prejudgment interest differs from that of Kansas and that those states would not permit the award of interest on suspended royalties.

Amoco has not established to our satisfaction the need to apply to this case any law other than the law of Kansas. Amoco offers no guidance as to what choice of law rules apply or how the choice of law problems should be characterized. The general rule is that the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred. 16 Am.Jur.2d, Conflict of Laws, Sec. 11, p. 25.

Even if we were inclined to find that Texas law has application to the claims of the Texas members of the plaintiff class, we are satisfied that Texas law would permit recovery of prejudgment interest on suspended royalties. In the very recent case of *Stahl Petroleum Company v. Phillips Petroleum Company,* 550 S.W.2d 360 (Tex. Civ. App. 1977), the Texas Court of Appeals awarded interest on suspended royalties. The *Stahl* case also arose out of the Hugoton-Anadarko area and the issuance of FPC Opinion No. 586. The Texas court concluded that the terms of the royalty

contract and the Texas interest statutes required the payment of prejudgment interest on the suspended royalties. Federal cases also have construed Texas law as permitting the award of interest on suspended royalties. *Phillips Petroleum Company v. Adams,* 513 F.2d 355 (5th Cir. 1975); *Phillips Petroleum Co. v. Hazlewood,* 409 F.Supp. 1193 (N.D. Tex. 1976); *Fuller v. Phillips Petroleum Co.,* 408 F.Supp. 643 (N.D. Tex. 1976).

Our examination of Oklahoma case law fails to indicate to us that the courts of that state would not permit prejudgment interest under the facts of this case. Unlike Kansas and Texas, Oklahoma seemingly has no decision directly answering the issue here concerned. However, several Oklahoma decisions hold that interest may be awarded on equitable grounds where necessary to arrive at fair compensation. *Smith v. Owens,* 397 P.2d 673 (Okla. 1963); *Robberson Steel Co. v. Harrell,* 177 F.2d 12 (10th Cir. 1949); *First Nat. Bank & T. Co. v. Exchange Nat. Bank and T. Co.,* 517 P.2d 805 (Okla.App. 1973).

We necessarily conclude that interest on suspended royalties may be recovered for the period of time such royalties remain in the control of and are available for use by oil and gas producers during the pendency of FPC proceedings and related litigation regarding the determination of applicable lawful rates.

Amoco next argues that the district court of Grant County, Kansas, lacked jurisdiction to adjudicate the claims of those members of the plaintiff class who are not Kansas residents and whose royalty interests do not relate to Kansas realty. Amoco does not dispute the exercise of in personam jurisdiction over it by the district court.

Amoco relies heavily upon Texas and Oklahoma venue statutes and cases construing those statutes which place the proper venue for an action concerning an interest in land in the county where the land is situated. It is argued that a royalty interest is an interest in land and therefore the Texas and Oklahoma venue statutes compel maintenance of any action involving a royalty interest to be in the local forum. Accordingly, Amoco maintains that the district court of Grant County lacked jurisdiction over the claims of those members of plaintiff class who are non-resident royalty owners and whose land is outside Kansas. We are asked to remand for the purpose of dismissing the petition as to the claims of such non-resident class members.

Amoco confuses the concepts of jurisdiction and venue. The two terms are not synonymous. The fact that an action involving an oil and gas lease would be maintained in the county where the land is situated under Texas and Oklahoma venue statutes if the action were initially brought there does not deprive the courts of another state of jurisdiction to hear the matter if the action is transitory. Venue is not a jurisdictional question but a procedural one. 77 Am.Jur.2d, Venue, Sec. 1, p. 832. The fact an action is tried in a county other than that declared by a venue statute as the proper county for its trial does not go to jurisdiction and does not invalidate the judgment. 77 Am.Jur.2d, Venue, Sec. 45, p.893.

The present action is a transitory action and the trial court, having in personam jurisdiction over the defendant, rendered a valid in personam judgment on behalf of the non-resident members of plaintiff class.

If the action is transitory, then a court hearing the matter has jurisdiction if it has in personam jurisdiction *over the defendant.* 20 Am.Jur.2d, Courts, Sec. 121, pp. 476-7; *Farha v. Signal Companies, Inc.,* 216 Kan. 471, 532 P.2d 1330. The transitory nature of a cause of action based on contract is not affected by the fact that real property is incidentally involved. 20 Am.Jur.2d, Courts, Sec. 127, p. 480. The fact that an oil and gas lease is involved in an action will not alone make it local in nature. In *Schindler v. Ross,* 182 Kan. 277, 320 P.2d 813, it was held that an action to recover oil payments mistakenly made under an oil and gas division order was a transitory action and in personam jurisdiction over defendant was sufficient.

In *Raynolds v. Row,* 184 Kan. 791, 339 P.2d 358, our Supreme Court stated as follows:

". . . Where the decree sought will act upon the person of a defendant rather than upon the real property, the location of the land indirectly affected is immaterial, and the action is considered to be transitory and may be brought wherever the defendant may be served with summons. . . ." (Syl. 1.)

In *Roberts v. Cooter,* 184 Kan. 805, 339 P.2d 362, the court said in part:

". . . An action on a contract is in its nature transitory, not necessarily local, and it is not material that the subject of the contract is realty if the title thereto is not drawn into question or the realty is only incidentally and not directly affected. . . ." (p. 812.)

The action brought by the plaintiff class was transitory even though some of the leases involved covered land outside Kansas. The subject matter of the action is Amoco's obligation to pay interest on the plaintiff class' money held and used by defendant over a period of several years. The title to realty is not drawn into question, nor is the recovery of any estate in realty in issue. The real property which is covered by the oil and gas leases is only incidentally affected. In personam jurisdiction over the defendant was sufficient to allow the district court of Grant County, Kansas, to render a valid judgment.

Amoco also argues the district court lacked jurisdiction to adjudicate the claim of the non-residents because they do not have the necessary "minimum contacts" with Kansas. Amoco relies upon the line of United States Supreme Court cases beginning with *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878), and running through *Hanson v. Denckla*, 357 U.S. 235, 2 L.Ed.2d 1283, 78 S.Ct. 1228 (1958), that deal with the "minimum contacts" due process requirement for the exercise of in personam jurisdiction. Amoco reasons that since some members of the plaintiff class are Texas and Oklahoma royalty owners having no apparent contacts with Kansas, the courts of this state lack jurisdiction to determine their claims. We do not agree.

The classic statement of the "minimum contacts" requirement for the exercise of in personam jurisdiction over non-residents is found in *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945), as follows:

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff*, 95 U.S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' . . ." (p. 316.)

That a *defendant* must have certain "minimum contacts" with the forum to permit the exercise of in personam jurisdiction consistent with the Due Process Clause is established law. We are unaware of any corresponding requirement that *plaintiffs* have

"minimum contacts" with the forum, beyond the contacts which are present in this case, to permit the exercise of in personam jurisdiction by the forum court on their behalf. On the contrary, in *Hansberry v. Lee,* 311 U.S. 32, 85 L.Ed. 22, 61 S.Ct. 115 (1940), the United States Supreme Court recognized that due process is not offended by the presence of non-residents of the forum state in a plaintiff class. The court said in part:

". . . Courts are not infrequently called upon to proceed with causes in which the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction . . . In such cases where the interests of those not joined are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree. . . .

". . . [T]his Court is justified in saying that there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it. . . ." (pp. 41-42.)

Amoco next argues that the plaintiff class was unmanageable because differing questions of law were before the district court as to the right of recovery of various members of the class. Amoco contends that the plaintiff class' right to recover interest depends upon the application of the law of three states: Kansas, Texas and Oklahoma. It is alleged that the relevant statutes and case law of the three states would lead to differing results and thus destroy the commonality of "questions of law or fact" required by K.S.A. 60-223(*a*)(2) (1973 Supp.).

As indicated earlier in this opinion, prejudgment interest on suspended royalties has been expressly approved by case law in Kansas and Texas, and we see no reason to believe it would not also be allowed by an Oklahoma court. The differing results Amoco complains of have not been manifested in the case law.

Amoco has expressed an overly restrictive interpretation of the commonality requirement of K.S.A. 60-223(*a*). Federal cases decided under corresponding federal statute [Federal Rule 23(a)(2)] show the commonality requirement has been liberally construed. *Sommers v. Abraham Lincoln Federal Savings & L. Ass'n.,* 66 F.R.D. 581 (E.D. Pa. 1975); *Fertig v. Blue Cross of Iowa,* 68 F.R.D. 53 (N.D. Iowa 1974); *Watson v. Branch County Bank,* 380 F.Supp. 945 (W.D. Mich. 1974).

We hold that there were questions of fact or law common to the plaintiff class, and the class was not unmanageable.

Amoco contends the acceptance of the payout of the suspended royalties in 1973 by the royalty owners bars any later claim for interest. It is argued that acceptance of the principal amount extinguished the debt and with it any right that may have existed to recover interest. This argument is in the nature of accord and satisfaction. To constitute an accord and satisfaction, there must be an offer in full satisfaction of the obligation accompanied by acts, declarations, or such circumstances that the party to whom the offer is made is bound to understand that if he accepts it is in full satisfaction of and discharges the original obligation. *Lippert v. Angle,* 215 Kan. 626, 527 P.2d 1016. There must be a complete meeting of the minds that there is full satisfaction and discharge of the claim. *Sanders v. Birmingham,* 214 Kan. 769, 522 P.2d 959.

During the 1973 payouts, Amoco unilaterally mailed out checks to the plaintiff royalty owners with the following notice:

"Area rates have recently been established by the Federal Power Commission for gas sales in the Hugoton-Anadarko area, and certain portions of price increases which were previously suspended have been approved. This check is settlement for your portion for the period indicated. Subsequent to this period, regular monthly settlement has been based on the applicable increased rates."

As the trial court correctly pointed out, the payout of suspended royalties did not include an accounting of the rates involved nor did it contain any indication whether or not interest was included. We are unable to find as a matter of law that there was a meeting of the minds that the claims were fully satisfied and discharged.

Amoco argues that the Oklahoma members of the plaintiff class are not entitled to recovery by reason of Okla. Stat. Ann., Title 23, Sec. 8 (West), which provides: "Accepting payment of the whole principal, as such, waives all claim to interest." We do not agree.

An identical statute has been held to have no application where the conditions of payment are such that the creditor has no opportunity to assert his claim for interest at the time of payment. *McConnell v. Pacific Mutual Life Ins. Co.,* 205 Cal.App.2d 469, 24 Cal. Rptr. 5. The individual members of plaintiff class had no practical opportunity to assert their claims for interest at the time of payment under the circumstances of Amoco's payout.

We have stated in regard to choice of law that Amoco has failed to establish the need for application of the law of Texas and

Oklahoma as to the right to recover interest on suspended royalties. Likewise, the facts disclosed by the record and Amoco's arguments fail to establish the necessity of application of the cited Oklahoma statute.

Our conclusion with respect to the Oklahoma statute, a damages statute, is consistent with the following statements in *Phillips Petroleum Company v. Adams,* supra:

"Phillips has done the [royalty owner] no wrong so that the [royalty owner] cannot claim interest as an item of damages, . . . [T]he [royalty owner] can claim interest from Phillips only as 'compensation allowed by law for the use . . . of money.' . . ." (513 F.2d at 365.)

We believe it proper to consider the claims of plaintiff class as analogous to situations involving application of the so-called "United States Rule." That rule provides that in applying partial payments to an interest-bearing debt which is due, in absence of an agreement or statute to the contrary, the payments should first be applied to the interest accrued and any surplus applied to reduction of principal. *Jones v. Nossaman,* 114 Kan. 886, 221 Pac. 271; 45 Am.Jur.2d, Interest and Usury, Sec. 99, p. 88. Under the facts of the present case, the payouts for suspended royalties by Amoco in 1973 are held by us to have been applied first to payment of accrued interest, the surplus applied to reduction of the principal amount of the suspended royalties, with the result that an unpaid portion of the principal obligation was left due and owing. Since the 1973 payouts did not fully satisfy the principal obligation owed by Amoco, the obligation was not extinguished, and the acceptance of the partial payment did not bar this later action.

We hold that the district court had jurisdiction over the parties and the claims of plaintiff class and acted correctly in granting an award of interest on the suspended royalties.

The only question remaining is whether the district court awarded interest at the proper rate.

Plaintiff class argues the trial court erred in fixing the rate of interest at six percent and that seven percent is a more equitable figure in light of economic inflation during the years the suspended royalties were held by Amoco. We do not agree. The six percent rate has ample support in the statutory case law of Kansas, Texas and Oklahoma. However, we do find it necessary to modify the award of interest in certain particulars.

The district court's award of interest was as follows:

"10. The statutory rate of interest herein in Kansas, Oklahoma and Texas is six per cent per annum and is allowed as the proper rate of interest to be applied to the suspended royalties herein from time of receipt until date of judgment herein with interest compounded on an annual basis."

We believe equitable principles (the basis for allowance of interest as held in *Lightcap*) require the award of six percent per annum simple interest from the date of receipt by Amoco until the date of payout to the plaintiffs. Applying the "United States Rule," after the payout there was still an unpaid principal amount due equal to the total principal due plus accrued interest, less the amount of the payout. (Assuming proper calculation, this amount, although principal, would equal the accrued interest to the date of payout.) We therefore further hold that equitable principles require six percent per annum simple interest be awarded on the unpaid balance of the principal amount owed from the date of payout until the date of judgment. From the date of judgment, January 8, 1976, interest should be awarded at the statutory judgment rate on the then total of the unpaid balance of the principal and the accrued interest thereon.

Our application of the "United States Rule" principle is consistent with the following statements in *Fuller v. Phillips Petroleum Co.*, supra:

". . . When the interest is not paid, the debtor simply gains the use of that amount representing interest, and he should not be able to achieve such use without paying for it. . . . Because the interest in this case was not paid by Phillips when it paid the principal sum ('sustainable' moneys), such interest then became a part of the principal and, as above indicated, the Fullers are as much entitled to their interest as to their principal and they are entitled to interest upon interest . . ." (408 F. Supp. at 648.)

The case is remanded for further proceedings in accord with this opinion.