No. 35,292

ROBERT MARSHALL, a Minor, by IRA T. MARSHALL, as Next Friend, *Appellee,* v. HOME MUTUAL INSURANCE COMPANY OF IOWA, J. C. KITCH et al., *Appellants.*

(119 P. 2d 529)

Opinion filed December 6, 1941.

A. W. Hershberger, J. B. Patterson, Enos E. Hook, Patrick J. Warnick, R. E. Kirkpatrick and Richard Jones, all of Wichita, for the appellants.

Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Sidney J. Brick and Lawrence E. Curfman, all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries sustained December 25, 1939, by plaintiff, who was riding in an automobile which collided with a truck loaded with coal on the highway, which collision was alleged to have resulted from negligence of defendants. The defendants were J. C. Kitch, owner of the truck, his insurance carrier, The Home Mutual Insurance Company, and Frank Smith, who was operating the truck at the time of the casualty. A summons issued for Frank Smith was returned "not found." The other defendants answered. A jury trial resulted in a verdict for plaintiff, on which judgment was rendered. The answering defendants have appealed.

On this appeal appellants make no complaint of the finding of the jury, which in effect was that plaintiff's injuries resulted from the fact that the truck was negligently stopped without lights or flares on the highway; neither do they contend that the evidence was insufficient to support the amount of the verdict. They do contend that at the time of the casualty the truck was not being operated "pursuant to the permit" issued by the State Corporation Commission; that at the time there was no insurance coverage on the truck, and that the court erred in refusing to give requested instructions and in giving certain instructions.

Stipulated facts and exhibits, insofar as they are pertinent to this appeal, may be summarized as follows: About February 10, 1939, J. C. Kitch, a resident of Syracuse, Kan., filed with the state corporation commission his application for a permit to operate as a private carrier for the transportation of property. In his application he stated that he was the owner of a specifically described truck; that he was financially responsible, and had filed a liability insurance policy in the amount and terms as required by law and the orders of the commission and would keep the same in full force and effect during the time he operated as a private carrier; that the principal commodities he would haul were cattle, salt and produce; that he would keep a full and complete record of his mileage and make reports required by the commission, and would submit to all rules and regulations promulgated by the commission and report any violation thereof that might come to his attention.

About the same time he filed with the state corporation commission a policy of insurance issued to him by the appellant insurer. This recited the name of the insured as J. C. Kitch; that his occupa-

tion or business was farmer and truckman; that the policy period was from January 15, 1939, to the same date in 1940; that the policy covered bodily injury liability to the amount of $5,000 for each person; it described the truck covered by the policy, which description was identical with that contained in the application for the permit; that the purposes for which it was to be used were commercial, which term was defined "as the transportation or delivery of goods, merchandise or other materials, and uses incidental thereto, in direct connection with the named insured's business occupation." The insuring agreement was "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, . . . sustained by any person, . . . caused by accident and arising out of the ownership, maintenance or use" of the truck, and the word "insured" as so used "includes not only the named insured, but also any person while using the automobile, . . . provided the declared and actual use of the automobile is 'pleasure and business' or 'commercial' each as defined herein, and provided further that the actual use is with the permission of the named insured." The policy specifically excluded any obligation of the company, "while the automobile is used in the business of demonstrating, . . . or while rented under contract or leased, unless such use is specifically declared and described in this policy and a premium charged therefor." There was attached to the policy the public liability and property damage endorsement of the state corporation commission, which in part recites:

"It is understood and agreed that the policy to which this endorsement is attached is written in pursuance of and such policy shall fulfill the insurance requirements of section 66-1,128, General Statutes of Kansas, 1935, or as may be hereinafter amended, and the rules and regulations of the state corporation commission adopted thereunder with respect to liability for injuries to persons. . . . Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof by the assured, shall relieve the company from liability thereunder."

It further recited that the policy should not expire nor cancellation take effect until ten days after notice in writing by the insurer should have first been given to the commission.

There was also a rider attached to the face of the policy headed, "Endorsement for Kansas local truckman."

The application of J. C. Kitch, above referred to, was duly approved by the state corporation commission and he was given per-

mit No. 100-16, authorizing him to operate as a private carrier for the transportation of property. The truck described in the application and in the insurance policy was duly registered as a vehicle to be operated under the permit. The state corporation commission issued to Kitch K. C. C. tags Nos. 10,725 and 10,726 for use on the truck so registered under the permit.

The rules of the state corporation commission provide that the holders of certificates, permits or licenses shall at all times carry on every vehicle operated under such certificate, permit or license, an identification card issued by the commission showing the certificate, permit or license number and a complete description of the vehicle. Such identification card shall be carried in the driver's compartment of the vehicle; that the K. C. C. tags shall be carried on all vehicles in a designated manner, and that whenever operations are abandoned under any certificate, permit or license, or upon cancellation thereof by the commission, or when the motor vehicle is removed from service at any time for the remainder of the year, all identification cards and K. C. C. tags issued under such certificate, permit or license shall be immediately forwarded to the commission.

It was stipulated that the K. C. C. tags had not been returned to the commission, nor had notice of abandonment of operations under the permit been given to the commission on or prior to December 25, 1939, and that no notice of expiration or cancellation of the insurance policy had been given to the commission on or prior to that date.

The rules of the corporation commission provide that the driver of any motor vehicle involved in an accident causing personal injury shall stop at the scene of the accident, render all possible assistance to injured persons, and give to any real party in interest demanding the same his name and address, name and address of his employer, if any, and his vehicle registration number, and as soon as possible after the accident the driver, if not himself a motor carrier, shall report all details of the accident to his employer or supervisory official, and in the event of an accident which results in death, or in an injury likely to result in death, a prompt report shall be made to the local sheriff or chief of police stating the facts, to be followed by a written report to the commission giving the time and place of the accident, the name of the person owning the vehicle, the name of the driver, state registration tag number, K. C. C. tag numbers, and other pertinent information.

There was testimony to the effect that the accident happened about two miles east of Augusta; that Smith reported the accident to the Augusta officials, and two highway patrolmen immediately went to the scene of the accident. They found on the truck the K. C. C. tags issued for the truck properly displayed, Smith produced for them from the compartment in the driver's seat the permit and identification certificate issued for the truck,. and in answer to questions from the patrolmen, which they were authorized to inquire, stated the truck belonged to J. C. Kitch and that he was driving the truck for Kitch. Later J. C. Kitch made a verified report of the accident to the state corporation commission in which, among other things, he stated the name of the motor carrier to be J. C. Kitch, and that the driver was Frank Smith. Also, in conformity to the statute, J. C. Kitch made a verified report to the corporation commission showing a full and complete summary of the movements of the truck for the month of December for the purpose of computing the ton-mileage tax. This shows the use of the truck under the name of J. C. Kitch for 225 miles on the date of December 25, 1939, the date of this accident.

Called as a witness for defendant, Kitch testified that he was the owner of the truck involved in the accident; that at the time of the accident the truck was being operated by Frank Smith, who had had the truck for approximately two weeks; that the witness did not know what he was hauling prior to the accident.

"Q. Would you tell me and the jury how he came to have possession of this truck? A. He said he would give me a cent-and-a-half a mile for the use of it for a while. . . .

"Q. Who was to pay you a cent-and-a-half a mile for the truck? A. Frank Smith."

Frank Smith, Kitch's son-in-law, who lived at Pratt, called as a witness for defendant, testified that he was the driver of the truck involved in the accident and that he had had the truck in his possession about two or three weeks; that he had made a trip to Colorado for Christmas trees and to Columbus, Kan.; that he brought goods back to Pratt and sold them.

"Q. Whom did they (the goods hauled) belong to? A. Belonged to me. . . .

"Q. What arrangement had you made with Mr. Kitch concerning your driving of this truck? A. He was to get a cent-and-a-half a mile out of the truck."

He further testified that on the day of the accident he had been

to Osage City with the truck for a load of coal and was returning to Pratt, where he intended to sell it; that he had paid for the coal and owned it.

Appellants argue plaintiff did not sustain the burden of proving the truck was being used in operations authorized by the permit at the time of the accident, and cite *Smith v. Republic Underwriters*, 152 Kan. 305, 309, 103 P. 2d 858, where in a similar case it was held to be a part of plaintiff's case to submit substantial evidence tending to show the truck was being so used at the time. They point out the load being hauled was coal and not "cattle, salt or produce," which in his application for a permit Kitch listed as "the principal commodities he will haul." The point is not well taken. The application contained the statement, "The applicant proposes to operate vehicles for the transportation of property," and it was stipulated Kitch was "given Permit No. 100-16 authorizing him to operate as a private carrier for the transportation of property." The fact that in his application for the permit he listed "principal commodities" he planned to haul did not make that list exclusive or prohibit the hauling of coal under the permit. The fact the truck had the K. C. C. tags and that Smith had the identification card at the time of the accident, and told the officers, whose duty it was to inquire, that he was driving for Kitch, and the fact that Kitch made two verified statements to the corporation commission that he was the owner and Smith the driver, constitute substantial evidence the truck was being used in operations authorized by the permit at the time of the accident.

Appellants contend there was no insurance coverage afforded at the time of the accident on Kitch, the owner; Smith, the user, or the truck itself. That is predicated upon the provision of the policy which excludes any obligation of the insurer while the truck was "rented under contract or leased" and upon the parol testimony of Kitch and Smith to the effect that upon the day of the accident, and for perhaps two weeks prior thereto, Smith had the privilege of using the truck and was to pay Kitch one and one-half cents per mile for the use he made of it.

The most that can be said for appellants in this connection is that the evidence on this point was conflicting. Both Smith and Kitch previously had made statements and performed acts quite clearly indicating the contrary. No special question was asked the jury on this branch of the case, hence the general verdict is a finding for

plaintiff upon that controverted evidence. Appellants, therefore, are in the position of predicating their argument upon testimony which was not given credence by the jury and the trial court.

Appellants argue this main point under several subheads, some of which are embodied in the discussion just made, and the others become immaterial in view of the conclusion reached upon the principal argument made. It is unnecessary to discuss each of those subheads separately.

Appellee cites *McDonald v. Lawrence*, 100 Wash. 215, 170 Pac. 576; *Cushman Motor Delivery Co. v. Smith*, 51 Ohio App. 421, 1 N. E. 2d 628, and other authorities tending to hold that even had the jury taken the parol testimony of Kitch and Smith at its full import and made a finding accordingly, such finding would not relieve appellants from liability. We do not find it necessary to decide that question.

We are not in good position to pass upon appellants' criticism pertaining to the court's instructions, since the abstract contains only two of those given, and we think those are not open to the interpretation placed upon them by appellants. These and additional excerpts from the instructions set out in the briefs indicate the instructions presented the case fairly to the jury.

We find no error in the record. The judgment of the court below is affirmed.