No. 38,963

MAURINE RUTH PARNELL, *Appellee,* v. SECURITY ELEVATOR COMPANY, *Appellant.*

(258 P. 2d 288)

Opinion filed June 6, 1953.

*William P. Thompson,* of Wichita, argued the cause, and *John W. Graue,* of Greensburg, *A. W. Hershberger, J. B. Patterson, Richard Jones, H. E. Jones* and *Jerome E. Jones,* all of Wichita, were with him on the briefs for the appellant.

*Clarence N. Holeman,* of Wichita, argued the cause and *W. A. Kahrs, Robert H. Nelson* and *Keith L. Wallis,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action by a widow for wrongful death of her husband. After the formal allegations, the petition alleged that Roy Parnell was fatally injured on the 12th day of June, 1951, due to the negligence of defendant, its agents, servants and employees; that prior to that time her husband was thirty-one years of age, in good health, earning $275 a month and was supporting her and her two minor children; that on the date named Parnell went into the elevator of defendant at the request and orders of defendant, its agents, servants and employees; that he was called to the premises by its manager and was instructed that he should go into the pit to rescue one Norval Hadley, who was at the bottom of the pit; that the deceased did go down into the pit upon those instructions and was killed as a result of following the instructions of defendant; that on the evening of July 11, 1951, defendant by its agent had placed into the elevator a highly dangerous chemical and defendant's manager neglected to advise deceased that there were any fumes or chemicals in the elevator; that defendant was guilty of some ten acts of negligence, that is, in placing the chemical in the elevator without giving notice to Parnell; in permitting and instructing its manager to place a chemical into the elevator when he was not properly instructed as to its handling and its dangerous qualities; in permitting a product to be used on its premises when it knew or should have known it to be dangerous to Parnell; in not allowing sufficient time to expire between the time of placing the dangerous chemical into its elevator and allowing, permitting, instructing and ordering Parnell to enter the premises; in failing to advise and inform Parnell that it had placed a chemical into its elevator on June 11th; in failing to open the doors of the elevator prior to commencing work in the elevator and allowing, permitting, inviting and ordering Parnell into the elevator when the doors were not open; in failing to provide a proper and sufficient ventilation system in its elevator; in failing to use and in failing to have available safety devices for the purpose of preventing accidents of this nature; in permitting, allowing, inviting, instructing and ordering Parnell to go into the pit of the elevator when it knew or should have known that going into the pit was highly dangerous and in all probability would result in the death of Parnell.

The petition further alleged that by reason of the relationship between its manager and defendant company the defendant company

was guilty of any and all of the act or acts of negligence committed by its manager, agent, servant and employee. The petition further alleged that the support provided by plaintiff's deceased husband was her only means of livelihood and that of her two minor children; that in addition to the financial loss she and the children had suffered mental anxiety, suffering, bereavement, loss of society, companionship, comfort and protection, loss of attention, advice and counsel, loss of marital care and loss of training, guidance and education; that the action was brought for the use and benefit of surviving spouse of decedent and the two children; that she had been damaged in the amount of $15,000 and prayed judgment for this amount.

The defendant filed a motion asking the court for an order requiring plaintiff to make her petition definite and certain by identifying the agent, servant and employee of defendant referred to and by stating in ordinary and concise language without repetition the facts constituting plaintiff's alleged cause of action regarding the circumstances under which plaintiff's decedent went into the pit at the defendant's elevator previously referred to as being at the invitation, permission, instruction or direction of defendant, or to strike the mentioned portions of plaintiff's petition for the reason they were conclusions of fact and law. This motion was overruled, whereupon defendant demurred to the petition on the ground it appeared on its face that several causes of action were improperly joined and the petition did not state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant. This demurrer was overruled.

Defendant in its answer admitted that Parnell was fatally injured on the date pleaded while in defendant's elevator, but denied that such was the result of any negligent act of any of its agents, servants or employees. The answer admitted that its manager placed a chemical fumigant in one of the bins of the elevator about 4:00 p. m. on June 11, 1951, and alleged that plaintiff's decedent saw the defendant's manager place the fumigant in the bin and knew the hazards attendant thereon; that under all the circumstances Parnell's death resulted from his own negligent act of entering the elevator in an attempt to effect a rescue and in the alternative plaintiff's decedent assumed the risk of asphyxiation when he entered the elevator pit knowing the fumigant had been placed in the adjoining bin.

The plaintiff's reply was a general denial.

At the close of plaintiff's evidence defendant's demurrer to it was overruled. This demurrer was presented again at the close of defendant's evidence, as well as in a motion by defendant for judgment. Both were overruled. Defendant then moved that plaintiff be required to elect upon what theory she felt or stated she could recover. After a colloquy between counsel and the court the case was submitted on the rescue theory and the motion denied.

The jury returned a verdict for plaintiff in the amount of $12,-691.18 and aswered special questions as follows:

"1. Q. Did Howard Sharp know or should he have known there were dangerous gas fumes present in the pit at the time Norval Hadley went down into it? A. Yes.

"2. Q. Did Roy Parnell know Howard Sharp placed the fumigant in the east dump bin of the elevator on the afternoon of June 11, 1951? A. No.

"3. Q. Was Roy Parnell familiar with the properties of chemical fumigants commonly used in treating grain in elevators and mills? A. No.

"4. Q. At the time Roy Parnell entered the pit did he think Norval Hadley's life was in danger? A. Yes."

Defendant filed a motion for a new trial on the ground of abuse of discretion of the trial court, erroneous rulings, passion and prejudice, verdict contrary to evidence, newly discovered evidence, error in overruling defendant's challenge to jurors for cause, error in overruling defendant's demurrer to plaintiff's evidence, in sustaining the objection of plaintiff to evidence offered by defendant, error in overruling defendant's demurrer to plaintiff's evidence at the conclusion of all the evidence, error in refusing the application of defendant to require the plaintiff to elect a clear and definite legal theory, error in giving incomplete instructions, error in failing to ask special questions requested by defendant and the verdict was excessive. This motion was overruled and judgment was entered accordingly.

The specifications of error follow generally the motion for a new trial.

Defendant argues first the trial court erred in overruling its challenge of jurors for cause on their *voir dire*. Some of the prospective jurors when being questioned on their *voir dire* answered that they had an opinion about the case. On further examination, however, each stated the opinion, whatever it was, would yield to evidence or was only an impression. After counsel had examined them and made the challenge the court examined each one.

The trial court is given wide discretion in determining the fitness of jurors. Its decision will not be disturbed unless it appears that

discretion has been abused. (See *State v. Springer,* 172 Kan. 239, 239 P. 2d 944.) It was not abused in this case.

Defendant next argues the trial court erred in sustaining plaintiff's objection to evidence offered by defendant tending to show a limitation on the agency of the manager of its elevator. That question arose this way. The plaintiff tried her case on the theory that decedent met his death while attempting to rescue a young boy who had been overcome by gas when sent into defendant's elevator by defendant's manager to take care of some wheat that had clogged a chute. Defendant offered to prove by its vice-president that it had instructed its manager not to hire any persons under the age of eighteen. The plaintiff's objection to this evidence was sustained. Defendant argues that if its manager violated instructions by sending a minor into the elevator his wrongful act in so doing interrupted the chain of causation from the placing of the chemical fumigant in the grain dump to the asphyxiation of Parnell. This argument is not good. In the first place, defendant admitted in its answer that Sharp was the manager of its elevator. In the second place, it is clear and undisputed that the young boy went into the elevator at the request of the manager to perform a task that needed doing for the benefit of defendant, that is, as Sharp said to "unclog" the wheat in the chute. There is very little evidence that the boy was hired at all. Decedent came to the elevator as a result of Sharp's call for help when the young boy fainted and fell to the bottom of the pit. It makes no difference as to the liability of defendant about how the boy came to be in the pit.

Defendant next argues the trial court erred in overruling its motion that the trial court declare a mistrial and discharge the jury when one of its own witnesses used the word "adjuster" while testifying on cross-examination by counsel for plaintiff. This witness was the manager who had already testified for the plaintiff. When the defendant was putting on its case he was called as a witness for defendant. The evidence had already shown that he had poured a gallon and a half or two gallons of a fumigant called "Chemi-Fume" into the elevator dump the afternoon before the tragedy. When he was called by the defendant he testified that following the tragedy he had occasion to take a sample of the "Chemi-Fume" which had been poured in the dump to be examined by a chemist. On cross-examination he was asked "How come you sent that in for analysis?" His answer was "The adjuster came out there and

got it. I didn't send it in." Immediately counsel for defendant moved for a new trial. This motion was overruled and defendant argues such ruling was error. Its argument is that this answer injected insurance into the case and brought it under the rule we have followed many times, that is, it is misconduct for the attorney for plaintiff in a personal injury case to inject into the trial before the jury the influence that defendant is protected by indemnity insurance. There are several answers to this argument. The best one is that the word "adjuster" did not actually inject insurance into the case. This elevator was one of a chain. For all that this record shows, it had an adjuster of its own. There are many adjusters besides those used by insurance companies. Besides, this word was used by a witness who was an employee of defendant. All the surrounding facts and circumstances indicate it was used inadvertently. As a matter of fact, to have given the jury an instruction that it must not be influenced by its use would have served to emphasize an otherwise unimportant occurrence.

Defendant next argues that the trial court erred in sustaining the plaintiff's objection to proffered testimony of manager Sharp as to a conversation between himself and decedent on the day before the tragedy.

That question arose when Sharp was testifying for defendant. When Sharp testified for plaintiff he testified that the co-operative elevator where decedent worked was due west of defendant's elevator and that when he poured the "Chemi-Fume" into the elevator the doors at both the east and west end of the elevator were open. He testified on cross-examination that decedent and another man were sitting in front of the loading dock of the warehouse of the co-operative elevator about 150 or 175 feet west of him. He further testified "I know that Roy Parnell saw me pour the fumigant into the bin." When he later testified for defendant, his employer, he was allowed to testify that he had a conversation with Roy Parnell at the time he poured the "Chemi-Fume" into the wheat. He was then asked by defendant to relate that conversation. Counsel for plaintiff objected and the objection was sustained. Thereupon defendant offered to prove that as Sharp was pouring in the fumigant decedent asked him if he was watering his wheat and Sharp said, "Yes, got to slurp it up a little bit." Defendant offered to prove that the term "watering wheat" did not have any general meaning among those familiar with operating elevators and that it was not customary for elevator operators to

water wheat. Plaintiff's objection to this proffer was sustained. Defendant's argument is that if decedent knew that a chemical fumigant had been placed in the dump of defendant's elevator on June 11, just the day before, and also knew the properties of such fumigants, such evidence tended to prove directly that he was negligent in entering the adjoining pit of the elevator the following morning and that he assumed the risk of the conditions existing there, including the noxious fumes from the chemical fumigant. Hence it argues the proffered evidence was competent. This argument is not good. There is no evidence at all that decedent knew or suspected that a fumigant had been placed in the elevator or that on the morning of this tragedy these fumes would be dangerous to human beings. The fact that decedent saw Sharp pouring something into the elevator would not put him on notice that it was a fumigant or dangerous to human beings. Furthermore, Sharp had already been permitted to testify that he knew decedent saw him pouring the fumigant in the wheat. The proffered evidence, even if competent, was merely cumulative. The action was tried and submitted on the rescue theory. The trial court instructed the jury that in attempting to save the life of another, one is justified in exposing himself to danger in a manner that under ordinary circumstances would deprive him of legal redress for the injuries sustained, but he could not rashly and recklessly disregard all consideration for his own personal safety without being guilty of contributory negligence. The proffered testimony did not tend to prove that decedent in going down into the elevator pit after the young boy acted either recklessly or rashly. The very idea of the rescue theory implies that the rescuer realized there was danger. (See *Smith v. Ice and Delivery Co.,* 117 Kan. 485, 232 Pac. 603.)

Defendant next argues the trial court erred in not requiring the plaintiff to elect a clear and definite theory upon which her claim for relief was based. This question was raised by defendant at the outset by a motion to make definite and certain and to strike and by a demurrer to the petition. It was renewed at the close of all the evidence. In the argument of these various motions defendant pointed out that the petition alleged the manager "instructed, advised and informed" decedent that he should go down into the pit of the elevator to rescue the boy, and again that decedent did go down into the pit upon the instructions and advise of the manager, and one of the acts of negligence with which defendant was charged was in permitting, allowing, inviting, instructing and ordering de-

cedent to go into the pit. There was a colloquy between court and counsel immediately after defendant had moved for an order requiring the plaintiff to elect upon what theory she stated she was entitled to recover. The court remarked the word "ordered" and "instructed" should be stricken. After further colloquy the trial court stated:

"The Court: It might appear that way. Of course, the witness Sharp who was the manager of the elevator said that he just went out there and was so frightened and out of his head and mind that he didn't know what to do and couldn't make a sound; all he could do was to make motions; and it was up to somebody I think to do something; and that is the theory no doubt on which the deceased Parnell acted. I think we will submit it on that theory. They were invited onto the premises. That is all that Sharp did was to cry for help."

The trial court subsequently gave Instruction No. 6 as follows:

"The law presumes that every person will at all times use ordinary care for his own safety. It is a general rule of law that one who is aware of a danger and fails to use ordinary care to avoid injury therefrom is guilty of contributory negligence. This rule is subject to a limitation where a person risks danger in order to rescue another person from peril, based on the principle that it is commendable to save life. It is the law that one who sees a person in imminent and serious peril caused by the negligence of another, cannot be charged with contributory negligence in risking his own life or serious injury to himself in attempting to effect a rescue, provided that the attempt is not recklessly or rashly made. In other words, in attempting to save the life of another, one is justified in exposing himself to danger in a manner that under ordinary circumstances would deprive him of legal redress for the injuries sustained; but he cannot rashly and recklessly disregard all consideration for his own personal safety without being guilty of contributory negligence.

"And in this connection it is for you to determine from all the evidence in this case whether or not the act of Roy Parnell in going down into the pit of the elevator in order to rescue Norval Hadley was a rash and imprudent act. If you find that said act was rash and imprudent then I instruct you that Roy Parnell was guilty of contributory negligence and the plaintiff cannot recover in this case. If you do not so find, then Roy Parnell was not guilty of contributory negligence."

This instruction fairly submitted the so-called rescue theory to the jury. Not all the instructions are brought here by defendant so we must assume no other theory was submitted. As far as this record indicates, the case was finally submitted on a clear and definite theory, as stated in the above instruction.

Defendant next argues that the trial court erred in failing to give instructions requested by it. In the first place, not all the instructions given by the trial court are in this record. Where a party

expects to argue that the trial court erred in not giving requested instructions he must bring up all the instructions given. (See *State v. Leigh,* 166 Kan. 104, 199 P. 2d 504; *Marshall v. Home Mutual Insurance Co.,* 154 Kan. 488, 119 P. 2d 529; *Gartner v. Williams Oil and Gas Co.,* 125 Kan. 199, 263 Pac. 778; and *Lambert v. Rhea,* 134 Kan. 10, 4 P. 2d 419.) In the second place, the instructions requested were not within the issues.

The defendant next argues that the trial court erred in giving Instruction No. 6. This was the instruction already quoted that submitted the rescue theory to the jury. Defendant argues it should not have been given because the petition did not allege a cause of action based on the theory of a violation of the duty owed a rescuer. The petition contained the following paragraph:

"That on said date herein referred to, the deceased, Roy Parnell went into the elevator of the defendant company at the request and orders of the defendant, its agent, servant and employee. That the deceased, Roy Parnell was called over to the premises of the defendant company by the manager, agent, servant and employee of said company and was instructed, advised and informed that he should go down into the pit of said defendant company's elevator to rescue one, Norval Hadley, who was at the bottom of the pit."

The reasonable interpretation to be given this allegation is that decedent was invited to go down into the pit of the elevator to "rescue" the young boy. It would not do to hold that such an allegation did not warrant submission of the rescue theory to the jury as was done by Instruction No. 6.

Defendant next argues that the trial court erred in failing to submit special questions requested by it. We have examined these requested questions. They were either not on the issues or were submitted by the trial court in slightly different form.

Defendant next argues its demurrer at the close of plaintiff's evidence renewed at the close of all the evidence and its motion for judgment, all of which raised the same questions, should have been sustained. It argues the only cause of action left in the petition finally was the theory that the defendant was negligent toward an invitee. It points out that negligence of the invitee which contributes to his injuries as a proximate cause bars his recovery. Its point is that the defendant owed the invitee only ordinary care. In this connection it should be stated defendant in its appeal does not argue that the record does not establish defendant's negligence.

Defendant concedes that when a person believes that the life of another is in imminent peril and he exposes himself to danger in an

effort to save the life of another, he is not held to the same level of care for his own safety that he would be under less harrowing circumstances. He argues, however, that the rescuer's cause of action cannot be maintained if the attempted rescue is reckless or rash in the judgment of prudent persons. He points out that decedent saw the chemical fumigant placed in the adjoining grain dump and saw the unconscious form of Norval Hadley at the bottom of the pit; that, therefore, for him to enter the pit made him guilty of being reckless and rash as a matter of law. This argument is not good. We have heretofore detailed the surrounding facts and circumstances about how the fumigant was poured in the wheat the day before the young boy was sent into the elevator to unclog the grain chute because he was small and could get through the hole into the pit; that the manager saw him faint and fall about eight feet to the bottom of the pit; that the manager was so frightened he couldn't speak but waved at decedent and some other man to come to the elevator where they looked down the pit and saw the recumbent form of the young boy. We have stated heretofore that the mere fact the decedent saw the fumigant being placed in the pit did not constitute notice to him that the fumes therefrom would be deadly to a human being. The manager himself testified he supposed the dust had caused the young man to faint. In consideration of a demurrer to the evidence we will not weigh evidence and we must indulge all reasonable inferences and presumptions in favor of the theory of the plaintiff. When we apply that rule to the surrounding facts and circumstances in this case we find there was room for the minds of reasonable men to differ as to whether this conduct was reckless and rash. Where that is the case the issue must be submitted to a jury.

The judgment of the trial court is affirmed.