No. 41,869

DELLA CONNELL, *Appellee,* v. NORTON COCA-COLA BOTTLING COMPANY, INC., *Appellant.*

(357 P. 2d 804)

*Wm. B. Ryan,* of Norton, argued the cause and was on the brief for the appellant.

*Marion W. Chipman,* of Hill City, argued the cause, and *W. H. Clark* and *Kenneth Clark,* both of Hill City, and *Keith G. Sebelius,* of Norton, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This action was based upon a breach of an implied warranty and sought damages for personal injuries sustained as a result of drinking from a bottle of Coca-Cola which contained a centipede.

The petition, after detailing the facts and circumstances surrounding the purchase of and drinking from the bottle of Coca-Cola, with the resulting nausea, vomiting and physical illness of plaintiff, alleged:

". . . that said bottle of Coca-Cola, as hereinbefore described, was manufactured, handled, distributed and sold by said defendant and said defendant impliedly warranted to the public and to plaintiff that said bottle of Coca-Cola and the contents thereof was fit and safe for human consumption and that it was so manufactured, bottled, handled and sold in a manner as not to be inherently or imminently dangerous. That the plaintiff relied on the said warranty, and the breach thereof, as hereinbefore alleged, by said defendant, resulted in the damages and injuries to plaintiff as above alleged for which plaintiff should have and recover judgment herein against said defendant for the sum of $7,500.00 and the costs of this action."

The answer and reply were in the form of a general denial.

The following is a brief summary of plaintiff's evidence:

On August 2, 1958, plaintiff and her sister, Mrs. Letha Rupp, visited their mother who was a patient in the Norton County Hospital. A Coca-Cola dispensing machine was in the waiting room of the hospital. Plaintiff inserted a coin in the machine and received a bottle of "coke." She opened the bottle and started to drink from it. Upon noticing that it tasted rather "peculiar" she handed it to her sister to taste. The sister also noticed that it did not taste "natural." Each of them took two or three swallows, whereupon the sister noticed a large decomposed centipede in the bottom of the bottle. They became frightened and nauseated and were taken to the office of a Norton doctor where they were given medicine and were treated for severe vomiting. As a result of the "experience" plaintiff and her sister were nauseated, given to vomiting, and

suffered physical distress for a considerable period of time. Plaintiff's sister missed work for a week as a result thereof. Each of them incurred a doctor bill of approximately $49.

The doctor who treated them testified that plaintiff would suffer nausea and vomiting for a period of time—perhaps for three months, but that probably she would suffer no permanent injuries, and that undoubtedly the illness of both plaintiff and her sister was brought about by seeing the centipede in the bottle rather than from the actual drinking of its contents.

It was further established that the "coke" machine was owned and serviced by defendant bottling company.

In behalf of defendant, its vice-president testified as to the manner of bottling Coca-Cola and as to the methods of sanitation and care used by the company in the operation of its business.

The jury returned a verdict for plaintiff in the amount of $1,000. Defendant's motion for a new trial was overruled and this appeal followed.

(In this connection, it should be stated that plaintiff's sister, Mrs. Letha Rupp, filed a similar action against defendant. The cases were consolidated for trial in the court below and were tried together upon the same evidence. The jury likewise returned a verdict in the amount of $1,000 in favor of Mrs. Rupp. Defendant's motion for a new trial was overruled and it also appealed in that case, the same being case No. 41,868, this day decided. The two appeals were not consolidated in this court.)

In this appeal defendant first contends that the trial court erred in denying its motion for judgment on plaintiff's opening statement to the jury, the argument being that such statement showed plaintiff's injuries to be "psychological" rather than physical, and for which, in an action based upon breach of an implied warranty, she was not entitled to recover, citing authorities from other jurisdictions and *Clemm v. Atchison, T. & S. F. Rly. Co.*, 126 Kan. 181, 268 Pac. 103, where, at page 184, appears the statement that—

"It has been repeatedly held in this state in substance that in an action where no physical injury is alleged or proved, no damages for mental suffering or anguish are recoverable."

We have read the pertinent portions of plaintiff's opening statement which, incidentally, incorporated by reference the allegations of the petition—and are of the opinion defendant's contention cannot be sustained.

The general rule with respect to such motions and rulings thereon is well stated in the recent cases of *Sherman v. Smika,* 184 Kan. 83, 334 P. 2d 330, where it was held:

"A motion for judgment on the pleadings and opening statement of counsel is not to be sustained unless it is absolutely clear that by the admitted facts the party against whom the judgment is granted cannot prevail." (syl. 1.)

and *McCarthy v. Tetyak,* 184 Kan. 126, 334 P. 2d 379, where, at page 131, it was said that no judgment can be rendered on an opening statement unless it appears the party making it has admitted facts which necessarily and absolutely preclude his recovery under the issues made by the pleadings. See also *Dearborn Motors Credit Corporation v. Neel,* 184 Kan. 437, 337 P. 2d 992.

In the case before us the opening statement and petition clearly relied upon a *combination* of psychological and physical injury—and the motion for judgment was properly overruled.

Defendant next contends that insofar as this plaintiff is concerned the court erred in refusing to give requested instruction No. 1 and in giving instruction No. 5 in lieu of requested instruction No. 2.

In passing on this point we are handicapped by the fact defendant has not included in the record (with the exception of No. 5) the instructions that were given by the court. The journal entry of judgment contains a recital that certain requested instructions "were denied except as given in part in substance." The general rule is that where a party raises questions involving instructions, such as the failure of the trial court to give certain requested ones, it is his duty to include in the record those which were given—otherwise there is no way for this court, on review, to determine what may or may not have been included in those instructions not brought here. (*Parnell v. Security Elevator Co.,* 174 Kan. 643, 650, 651, 258 P. 2d 288; *Steck v. City of Wichita,* 179 Kan. 305, syl. 7, 295 P. 2d 1068, and *Beye v. Andres,* 179 Kan. 502, 504, 296 P. 2d 1049.)

Be that as it may, in instruction No. 5 the jury was properly told that in order for plaintiff to recover it was necesasry for her to prove by a preponderance of the evidence that there was a centipede in the bottle of Coca-Cola purchased by her; that she drank therefrom and was made ill and suffered damage on account thereof, and that such beverage was manufactured, bottled and sold by defendant.

Defendant's contentions with respect to instructions given or refused cannot be sustained.

And, finally, it is argued that the evidence established only "psychological" or "mental" injury to plaintiff, rather than physical suffering, and thus was insufficient to support the verdict and judgment. In fact, this appears to be the thread and gist of all contentions advanced by defendant—although variously stated.

It is true that plaintiff quite understandably had severe "psychological reactions" as the result of her experience in drinking from a bottle containing a decomposed centipede—but the evidence showed that she also suffered physical distress in connection with her mental condition, and that the two were—so to speak—inseparable. Cases of this type frequently have reached this court, one of the latest being *Cernes v. Pittsburg Coca Cola Bottling Co.*, 183 Kan. 758, 332 P. 2d 258, and we quote briefly from the opinion:

"It may be stated as a general rule of this court that where beverage is manufactured and bottled for immediate human consumption and by a series of transactions reaches a retail dealer who sells to the consumer, the manufacturer or bottler impliedly warrants such beverage is wholesome and fit for immediate human consumption. Moreover, the manufacturer or bottler must know the beverage is fit or take the consequences if it proves injurious. . . .

"Our decisions further hold that a manufacturer or bottler of food or beverage for human consumption is in effect an insurer that such food or drink will cause no harmful effects because of deleterious matter therein. The basis for imposing this liability is a matter of public policy for the protection of the people, as discussed in many of our cases. . . .

". . . This was an action for breach of warranty that the content of the bottle was pure, wholesome and suitable for consumption. The presence of any foreign body obnoxious to that purpose would amount to a breach of that warranty, which would permit recovery of some damages if injury resulted therefrom. A person drinking from a bottle of Coca Cola, which is presumably clear, pure, refreshing and wholesome, and suddenly finding his mouth full of 'a jelly substance like, of slimy like serum, mud or a bug or something,' swallowing part of it but being able to spit some of it out, then looking into the bottle and finding the slimy substance, could very easily become ill and suffer from intense nausea which could produce illness requiring treatment by a physician, as was the case here. Whether the illness was produced by and resulted from emotional distress caused by ascertaining the presence of the slimy matter in the bottle is of no consequence, as defendant's failure to keep this foreign matter out of the bottle was the cause of the emotional and psychological distress which directly resulted in the physical injury. Certainly, it cannot be said that such slimy substance is a normal thing to be found in Coca Cola and that it is conducive to the health and well-being of a person purchasing the beverage in the belief it is refreshing, nourishing and wholesome. . . ." (pp. 761 and 762.)

An examination of this record discloses no error and the judgment is affirmed.