No. 42,225

REFUGIO ROBLES, *Appellant,* v. CENTRAL SURETY & INSURANCE CORPORATION, TRANSCONTINENTAL BUS SYSTEM, INC., and RAYMOND AVELAR, *Appellees.*

(363 P. 2d 427)

Opinion filed July 8, 1961.

*Clarence N. Holeman,* of Wichita, argued the cause, and *Wendell E. Godwin,* of Wichita, was with him on the briefs for appellant.

*Gerald Sawatzky,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Donald L. Cordes* and *Robert L. Howard,* all of Wichita, were with him on the briefs for appellees Central Surety and Insurance Corporation and Transcontinental Bus System, Inc.

*John E. Rees,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, Robert T. Cornwell, Willard B. Thompson* and *David W. Buxton,* all of Wichita, were with him on the briefs for appellee Raymond Avelar. *Hugo T. Wedell* and *Homer V. Gooing,* both of Wichita, of Counsel.

The opinion of the court was delivered by

FATZER, J.: This was an action for damages by the plaintiff-passenger of an automobile against the driver, Raymond Avelar, and the Transcontinental Bus System, Inc., and its public liability insurance carrier, arising out of a collision when the automobile was driven onto U. S. Highway 81 in front of the oncoming bus. The jury answered special questions and, by general verdict, found in favor of the defendants. Plaintiff has appealed from the judgment entered on the jury's verdict and special findings, and from orders overruling his motions for a new trial and to set aside the verdict and special findings.

The accident occurred on October 21, 1956, at about 11:30 p. m. at the intersection of U. S. Highway 81 and 77th Street North, north of Wichita. U. S. 81 is a hard surfaced, four-lane, north-south transcontinental highway, and traffic is controlled on 77th Street, an east-west graveled country road, by stop signs at the intersection.

Pertinent portions of the testimony, and the events leading up to the accident, are summarized and quoted: Plaintiff Robles and defendant Avelar were married to sisters. About 3:30 p. m. on the day of the accident Avelar drove his wife to Robles' residence to visit Mrs. Robles who was ill. Avelar did not go into the house, but Robles came out. They talked for awhile, and Avelar asked Robles whether he wanted to "stick around here or shall we go for a

ride." Robles said, "lets go for a ride." They left in Avelar's 1951 Chevrolet. There was no purpose for their trip other than pleasure, and Avelar drove the car the entire time. After leaving the Robles residence they encountered two men who had some "corn liquor." Both Robles and Avelar accepted a drink which was offered. Avelar bought a half pint of the liquor from the two men and all four men had a drink. After some visiting, Robles and Avelar "talked to decide" whether they would go see a friend of Avelar's. They drove to the friend's residence and visited there with three men. Robles drank some wine and the men talked. Later, Robles and Avelar left and drove into the country northeast of Wichita to look over their old fishing and hunting grounds and discussed the possibility of building a shack, and talked about many matters of mutual concern to themselves. They both drank from the half pint, and emptied it. They continued to drive, and intermittently stopped and talked. Finally, they decided to return home. Robles was sitting in the front seat, and while going west on 77th Street, he said to Avelar, "I think I will crawl into the back and take a nap," and he moved from the front seat into the back seat. Avelar testified he did not know whether Robles went to sleep or stayed awake. Robles did not testify on his own behalf. The evidence was that the car was moving when Robles crawled into the back seat and Avelar continued west on the country road, driving 30 to 40 miles per hour.

When Avelar reached the immediate vicinity of the stop sign on 77th Street east of the intersection, a long pile of sand and gravel obstructed his view to the north of southbound traffic on the highway. While the evidence was conflicting whether he stopped at the stop sign before proceeding into the intersection, the jury resolved that question in Avelar's favor by finding that he did stop. At any rate, after stopping, Avelar suddenly drove his automobile across the highway directly into the path of the oncoming bus which was traveling south on the inside lane of the southbound trafficway. Witnesses described the movement of Avelar's automobile as, "the car just darted across the road," and "ran into the left front of the bus." Prior to the collision the bus had been traveling between 50 and 55 miles per hour, and was on schedule. The bus driver had no time or opportunity to avoid the collision and was only able to begin braking, and turned the bus slightly to the east before the collision occurred. There was evidence the bus was traveling 38

miles an hour at the time of the accident. As a result of this unfortunate occurrence Robles was severely injured. His spinal cord was severed, and he is permanently paralyzed from the waist down and will be confined to a wheel chair for the rest of his life.

After the accident Avelar was arrested and pleaded guilty to driving while under the influence of intoxicating liquor. It was stipulated that an alcoholic test was made on him which showed his blood to contain .18 percent alcohol. Plaintiff was taken to a hospital and the observation of the nurse in charge when he was admitted was that "the patient had been drinking prior to the accident."

Answers by the jury of pertinent special questions are summarized and quoted: Avelar stopped at the stop sign east of the intersection and when he did so, his automobile was not visible to the driver of the southbound bus. He was unfamiliar with the intersection and did not realize danger was imminent as he entered the intersection, and when he entered it, the bus was so close as to constitute an immediate hazard and its driver had no time or opportunity to avoid the accident. No finding of negligence was made against the bus company or the insurance company, and Avelar was found not to be guilty of gross and wanton negligence which was a proximate cause of plaintiff's injuries. Question No. 8 and its answer are quoted:

"Q. Was the plaintiff's failure to exercise due regard for his own safety a proximate cause of his own injury? A. Yes."

The legal effect of the finding was that plaintiff was guilty of negligence which was the proximate cause of his injuries, and barred his right to recover against Avelar for ordinary negligence.

No objections were made to any of the special questions submitted, and the answers given by the jury were accepted by the court. Plaintiff moved to set aside the general verdict and the answers to the special questions on the ground they were not supported by evidence, and for a new trial, specifying numerous grounds. Those motions were overruled, and judgment was entered in favor of the defendants.

Plaintiff first argues the general verdict for the defendants and answers to special questions should be set aside because they are not supported by the evidence. In support of the contention, plaintiff advances certain arguments and theories which were presented to the jury, based upon his version of the evidence from his own

witnesses, some of whom gave expert testimony. This was purely a fact case, and we deem it unnecessary to detail plaintiff's various arguments. The evidence was in sharp conflict on decisive issues and the jury resolved them against the plaintiff and in favor of the defendants. In such a situation, the long-established rule of this court applies, that where findings are attacked for insufficiency of evidence, or as being contrary to the evidence, this court's power begins and ends with the determination whether there is substantial evidence to support them, and where they are supported, they are accepted as true and will not be disturbed on appeal. Moreover, it is of no consequence that there may have been much contrary evidence adduced, which, if believed by the jury, would have compelled entirely different findings of fact and an entirely different judgment (*Renner v. Monsanto Chemical Co.,* 187 Kan. 158, 168, 354 P. 2d 326, and the many cases cited). It would add nothing to the law of this state to recite the testimony of witnesses for the respective parties; it is sufficient to say that, after full and careful examination of the record, the court is of the opinion there was ample evidence to support the answers to the special questions and the general verdict in favor of the defendants.

The plaintiff next contends the jury's verdict and answers to special questions are logically irreconcilable, being contrary to each other and to the general verdict. The point is not well taken. A general verdict imports a finding upon all issues in the case not inconsistent with the special findings (*Epple v. Kress & Co.,* 187 Kan. 452, 357 P. 2d 828). In considering answers to special questions the court is to give them, if possible, such a construction as will bring them in harmony with the general verdict, and in such a case, the court is not permitted to isolate one answer and ignore other answers, but all are to be considered, and if one interpretation leads to inconsistency and another is in harmony with the general verdict, the latter is to be adopted (*Applegate v. Home Oil Co.,* 182 Kan. 655, 660, 324 P. 2d 203).

Plaintiff's principal complaint on this point is that the jury exonerated the bus driver of negligence and Avelar of gross and wanton negligence, but found him guilty of contributory negligence. This action was pleaded and tried upon the theory that plaintiff was a guest in Avelar's automobile and that Avelar was guilty of gross and wanton negligence, and that the driver of the bus was guilty of negligence. Under that state of the record, there was no necessity for the jury to make a finding concerning the negligence

of Avelar since it was not contended plaintiff was a paying passenger, and no special questions on that point were requested or given. Hence, the complaint that the jury made no specific finding that Avelar was guilty of negligence is immaterial (*In re Estate of Wright*, 170 Kan. 600, 604, 605, 228 P. 2d 911; *Bedenbender v. Walls*, 177 Kan. 531, 537, 538, 280 P. 2d 630; *Schmid v. Eslick*, 181 Kan. 997, 1003, 1004, 317 P. 2d 459). We point out, however, that the answers to special questions 5 and 6 to the effect that when Avelar entered the intersection the bus was so close as to constitute an immediate hazard, thereby preventing the driver from having time or opportunity to avoid the accident, were findings of negligence on the part of Avelar (G. S. 1959 Supp., 8-552 [b]; *Hurla v. Capper Publications, Inc.*, 149 Kan. 369, 373, 87 P. 2d 552; *Blakeman v. Lofland*, 173 Kan. 725, 731, 252 P. 2d 852). Be that as it may, the answers to the special questions were not inconsistent with each other, or with the general verdict.

Plaintiff next contends that the giving of instructions Nos. 13 and 17 was erroneous and requests a new trial. He also argues that requested instructions Nos. 1 and 2 were erroneously refused. We think those questions have not been preserved by plaintiff for appellate review. In addition to the two instructions complained of, we are advised the district court gave 32 other instructions which plantiff failed to abstract in disregard of the general rule that where a party raises questions involving the giving of, or refusal to give, instructions, it is his duty to include in the record on appeal those which were given and those which were refused, otherwise there is no way for the supreme court to determine what may or may not have been included in the instructions not brought up (*Parnell v. Security Elevator Co.*, 174 Kan. 643, 258 P. 2d 288; *Beye v. Andres*, 179 Kan. 502, 296 P. 2d 1049; *Avery v. City of Lyons*, 183 Kan. 611, 331 P. 2d 906). This rule is subject, however, to the exception that instructions given may be reviewed if they are a clear and prejudicial misstatement of the law. In *Parnell v. Security Elevator Co.*, supra, it was said:

"Defendant next argues that the trial court erred in failing to give instructions requested by it. In the first place, not all the instructions given by the trial court are in this record. Where a party expects to argue that the trial court erred in not giving requested instructions he must bring up all the instructions given. (See *State v. Leigh*, 166 Kan. 104, 199 P. 2d 504; *Marshall v. Home Mutual Insurance Co.*, 154 Kan. 488, 119 P. 2d 529; *Gartner v. Williams Oil and Gas Co.*, 125 Kan. 199, 263 Pac. 778; and *Lambert v. Rhea*, 134 Kan. 10, 4 P. 2d 419.)" (l. c. 650, 651.)

In *Beye v. Andres,* supra, it was held:

"Unless an instruction to which an objection is made is a clear and prejudicial misstatement of the law, it can be reviewed only when other instructions which may or may not modify its intent and effect are made a part of the record, in order that all may be examined together." (Syl. ¶ 2.)

And in *Avery v. City of Lyons,* supra, it was held:

"It devolves upon the party appealing to bring up a complete record of all matters upon which review is sought. This rule has application where the trial court refuses to give a requested instruction and the other instructions, which may have a bearing on the point, are not presented in the record." (Syl. ¶ 5.)

See, also, *Waterbury v. Riss & Co.,* 169 Kan. 271, 293, 219 P. 2d 673; *Walker, Administratrix v. Gerritzen,* 179 Kan. 400, 295 P. 2d 635; *Steck v. City of Wichita,* 179 Kan. 305, Syl. ¶ 7, 295 P. 2d 1068; *Long v. Foley,* 180 Kan. 83, 93, 94, 299 P. 2d 63; *Monson v. Dupy,* 180 Kan. 71, 73, 299 P. 2d 580, and *Connell v. Norton Coca-Cola Bottling Co.,* 187 Kan. 393, 357 P. 2d 804.

Since plaintiff has not set forth any of the 32 instructions given in addition to the two of which complaint is made, we are in no position to pass upon his criticism pertaining to the instructions given, or to the requested instructions which were refused. An examination of instructions Nos. 13 and 17 fails to disclose any "clear and prejudicial misstatement" of the law applicable to the case. Furthermore, the only objections noted in the record were that instructions Nos. 13 and 17 were given over plaintiff's "recorded objections." Such a statement is insufficient to advise this court of the specific objections lodged against the instructions when they were under consideration by the district court. Clearly, plaintiff's "recorded objections" do not reveal to this court the nature or character of his objections, and, in fact, amounts to no objection at all. Under such circumstances, the instructions given became the law of the case on that subject (*Laughlin Motors v. Universal C. I. T. Credit Corp.,* 173 Kan. 600, 613, 251 P. 2d 857; *Watkins Co. v. Hanson,* 185 Kan. 758, 763, 347 P. 2d 447).

Lastly, plaintiff argues the district court erred in overruling his motion for a new trial. The only grounds of that motion urged on appeal relate to the instructions given and those refused, and that the verdict and answers to special questions were not supported by the evidence and were inconsistent with each other and the general verdict. We shall not reiterate what has heretofore been said and held concerning those points. It suffices to say that

plaintiff has not affirmatively shown the alleged errors prejudicially affected his substantial rights (G. S. 1949, 60-3317), and the district court did not err in overruling his motion for a new trial.

We conclude this opinion with the observation that plaintiff has had his day in court with a fair and complete trial on all the issues raised by the pleadings. A jury denied recovery after hearing the evidence from many witnesses who testified on behalf of the parties and after having visited the scene of the accident. The special findings and the general verdict are consistent with each other and were amply supported by evidence which the jury chose to believe. The judgment of the district court is based upon those findings and verdict, and that judgment should be and is hereby affirmed.

It is so ordered.