No. 45,568

Ruth B. Morris, *Appellant*, v. Gloria Hoesch, a Minor, *Appellee*.

(466 P. 2d 272)

Opinion filed March 7, 1970.

*Arnold M. Mize,* of Derby, argued the cause, and *Jerry L. Griffith,* of Derby, was with him on the brief for the appellant.

*Jerry G. Elliott,* of Wichita, argued the cause, and *Mikel L. Stout,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a negligence action arising out of an intersection automobile collision. Judgment was entered on a jury verdict for defendant and plaintiff has appealed.

At the trial at the conclusion of the evidence the court instructed the jury defendant was negligent as a matter of law and it submitted to the jury the issues of contributory negligence and plaintiff's damages. The jury returned a general verdict for defendant. Defendant conceded at trial plaintiff suffered some injury as a result of the collision, and the parties now agree the jury verdict against plaintiff necessarily was based upon a finding of contributory negligence on the part of plaintiff and must stand or fall upon that basis.

Plaintiff contends the evidence was insufficient to support any finding of contributory negligence. Review of the evidence discloses the following:

James street in Derby, Kansas, is a through street forty feet wide, running east and west. It is intersected by Baltimore, a north and south street thirty feet in width. Both are two way streets. A "Yield" right-of-way sign at the intersection controls traffic on Baltimore street approaching James street from the north.

On March 29, 1966, during the daylight hours, plaintiff was driving her 1957 Volkswagen bus east on James street. Defendant was driving her 1964 Oldsmobile station wagon south on Baltimore street at a speed of between fifteen and twenty miles per hour. As she approached the James street intersection defendant slowed down to almost a complete stop at the "Yield" sign. She looked both directions and let a car approaching from the west go by the intersection. This automobile was driven by an acquaintance of defendant and the two recognized each other. Defendant looked west again and then proceeded south into the intersection at a very slow speed. She got almost through the intersection when she struck plaintiff's vehicle. Defendant did not see plaintiff's bus

until she hit it. Plaintiff's vehicle was struck on the left side about in the middle. The point of impact was thirty-one feet two inches south of the north line of James street and eleven feet three inches east of the west line of Baltimore street. Defendant's vehicle did not travel after impact. Plaintiff's bus traveled southeast sixty-one feet up into a yard and into a car parked on Baltimore and then back across James street.

An investigating police officer arrived upon the scene soon after the collision. He detected the odor of alcohol on plaintiff while administering first aid and later taking her to receive medical attention. In her police accident report plaintiff stated she was traveling down James street at a speed of between twenty and twenty-five miles per hour and as her answer to the item "Distance Danger Noticed" she indicated "zero". In the report she also stated: "I never saw the [defendant's] car coming". About one week prior to trial plaintiff told an examining doctor she did not see the approach of the other car prior to impact. At trial plaintiff testified she did see defendant's automobile approaching the inter-section and she thought defendant was going to slow or stop at the intersection and the next thing she knew she woke up on the curb. She explained her failure to see defendant's car again: "And then as I got on into the intersection; of course, the Volkswagen has no windows in it other than the window in the driver's door. . . . And then she got out of my line of vision as I got past, well, half-way past her".

In her answer defendant pleaded generally that plaintiff was guilty of contributory negligence. At pretrial conference the issues were sharpened and plaintiff's contributory negligence was specified to include failure to keep a lookout, driving at an excessive rate of speed under the circumstances and failure to stop, swerve or turn to avoid the collision. The jury was instructed upon these issues and plaintiff lodged no objection to the instructions.

Plaintiff argues in effect that because she was on a favored high-way she was entitled to rely on the assumption her right-of-way would be respected so that in any event she could not be guilty of contributory negligence. Our cases do not go so far in a situation where a motorist has not looked to see what is in plain sight to be seen. It is the duty of the driver of a motor vehicle on a public highway to keep a proper lookout for vehicles and objects in his line of vision which may affect his use of the highway. In *Degraw*

*v. Kansas City & Leavenworth Transportation Co.,* 170 Kan. 713, 228 P. 2d 527, this court approved the rule that the driver of a motor vehicle has the duty of keeping a proper lookout at all times, the extent of the observation being dependent upon the circumstances then existing, and such duty includes the obligation to keep a lookout for such vehicles even as may be negligently on the highway.

In *Green v. Higbe,* 176 Kan. 596, 272 P. 2d 1084, this court stated: "The right of way and the right to assume absence of negligence by others does not absolve the possessor of the prior right of the consequence of his own independent negligent acts. . . ." (Syl. ¶ 4.) In *Jarboe v. Pine,* 189 Kan. 44, 366 P. 2d 783, this rule was elaborated:

"The driver of a motor vehicle upon a public street or highway, even though he be in law the favored driver, or the driver with the right of way, and even though he has the right to assume others traveling on the public street or highway will comply with the obligation imposed upon them, is not absolved of the consequence of his own independent negligent acts. He is required to regulate his use of the public street or highway by the observance of ordinary care and caution to avoid receiving an injury or inflicting an injury upon another. He has a duty to look ahead and see what there may be within his view which may affect his use of such street or highway and to keep a lookout for other users of such street or highway, and he is in law presumed to have seen and heard that which he could have seen and heard had he kept a proper lookout and exercised ordinary care and caution. His failure to use that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances is negligence as a matter of law." (pp. 50-51.)

Upon appellate review this court accepts as true the evidence, and all inferences to be drawn therefrom, which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom. Where findings are attacked for insufficiency of evidence, or as being contrary to the evidence, this court's power begins and ends with determining whether there is evidence to support such findings. Where the jury's findings are so supported, they will not be disturbed on appeal. It is of no consequence there may have been contrary evidence adduced which, if believed by the jury, would have supported different findings. (*Robles v. Central Surety & Insurance Corporation,* 188 Kan. 506, 363 P. 2d 427).

In *DeGraw v. Kansas City & Leavenworth Transportation Co.,* supra, the familiar rule was stated that where the evidence in a highway collision case is such that reasonable minds might differ

on the question of negligence of either of the drivers, the issue is one for submission to the jury. Many other cases of like effect may be found in 4 Hatcher's Kansas Digest, rev. ed., Negligence, §§ 73-75, and 7A West's Kansas Digest, Negligence, § 136 (9), (10), (14), (25) and (26), but they need not be discussed.

Although the question presented is a close one, we think this was essentially a fact case. In some respects plaintiff's evidence was conflicting and contradictory, as in her own statements as to whether she saw defendant's automobile, and any conflicts were for jury resolution. The jury would have been entitled to find plaintiff did not see defendant's car at all. Plaintiff's explanation as to why she did not see defendant's car—that defendant's vehicle went out of her line of vision as she passed—might have been rejected by the jury as inconsistent with the physical facts. There was nothing in the street obstructing plaintiff's view to the north. Defendant struck plaintiff's bus in the middle at approximately a right angle, thirty-one feet inside the forty foot street. Defendant's automobile had gone more than three-fourths the distance through the intersection. It was traveling very slowly—so slowly it did not go beyond the point of impact while plaintiff's bus traveled a considerable distance. The jury might well have believed plaintiff did not see defendant's vehicle simply because she failed to look. Plaintiff does not contend she took any kind of evasive action and none is indicated by the evidence.

We think the facts were such that reasonable minds in the exercise of an impartial judgment might have reached different conclusions on whether plaintiff's conduct measured up to that expected of the reasonably careful person and the issue of contributory negligence became a question for submission to a jury (*Gardner v. Pereboom*, 197 Kan. 188, 416 P. 2d 67). It follows that the jury's finding was sufficiently supported by the evidence.

Plaintiff's final contention is the jury's verdict was rendered under the influence of passion and prejudice because of the receipt of evidence indicating she had drinking problems, marital difficulties and certain physical ailments prior to the collision. At pretrial conference and later at trial plaintiff asserted she had developed traumatic neurosis as a result of the collision. She testified as to certain manifestations. Upon cross-examination, without objection, she testified to the matter now complained of. We will not detail this testimony. Suffice it to say it had highly probative value in refu-

tation of the assertion of traumatic neurosis. The evidence was relevant upon that issue and was of such nature as to be indispensable for its legitimate purpose despite any possible side effects. The contention is without merit (see VI Wigmore on Evidence, 3d ed., § 1864, p. 491).

The judgment appealed from is affirmed.

APPROVED BY THE COURT.